## Cox *v.* THE STATE.

The acts of the state legislature of 1829 and 1831, making it a penal offence to erect or continue any obstructions in certain navigable streams within the state, are constitutional and valid.

The public have a right of way in navigable streams within the state, which right cannot be interrupted by the owners of the banks of such streams.

Neither the state legislature, nor congress, can authorise the erection of obstructions in any navigable stream, within the state.

An indictment for obstructing a navigable stream must state the name of the stream, that the part obstructed is navigable, and that the bed has not been surveyed and sold as land by the *United States:* it must, also, state the place where the obstruction is situated, that the passage of boats is obstructed, &c.

May Term,
1833.

Cox
v.
THE STATE.

Tuesday,
May 28.

ERROR to the *Morgan* Circuit Court.

STEVENS, J.—At the *April* term, 1832, of the *Morgan* Circuit Court, *Cox* was indicted for obstructing the west branch of *White* river. The indictment contains two counts. The first count charges that *Cox*, with force and arms, did erect and keep up a certain mill-dam, in and across the bed of said stream, below the *Delaware* towns; and that said mill-dam so erected is still kept up, and that it destroys the navigation of the stream. The second count charges that the said *Cox*, with force and arms, did erect and keep up a certain other mill-dam, of the height of three feet, across the main channel of the stream, beginning on the west side thereof, and extending up, along, and across the same, about 50 rods, to the upper end of an island, so as to divert, alter, and change the channel of it; and that said mill-dam is calculated to destroy, injure, and obstruct the navigation, said river being a public highway. An issue was joined on the plea of not guilty, which was tried by a jury; a general verdict of guilty found; a fine of 5 dollars assessed; and final judgment rendered thereon by the Court.

To these proceedings, record, and judgment, several objections are raised,—the first of which is, that the west branch of *White* river is one of the navigable waters declared to be common highways, to remain forever free, by the last clause of the 4th article of the ordinance of congress of the 13th of *July*, 1787; that the bed thereof has not been surveyed and sold as land by the *United States*, but has been returned as one of those navigable streams; that it is not within the legal controul or protection of the state of *Indiana;* and that therefore the acts of 1829 and 1831, making it a penal offence against the state to obstruct any of those streams, is unconstitutional and void. To sustain this objection, the ordinance of congress of the 13th of *July*, 1787, the acts of congress of the 18th of *May*, 1817, 3d of *March*, 1803, 26th of *March*, 1804, the proviso to the 4th section of the act of the 19th of *April*, 1816, and the ordinance of *Indiana* of the 29th of *June*, 1816, are relied on.

By the latter clause of the said 4th article of said ordinance of congress of the 13th of *July*, 1787, it is ordained, that the navigable waters of the territory north-west of the river *Ohio*, leading into the *Mississippi* and *St. Lawrence*, shall be common highways, and be forever free, as well to the inhabitants of said territory as to the citizens of the *United States*, and those of

other states that may be admitted into the confederacy, without
any tax, impost, or duty therefor.    The acts of congress of the
18th of *May*, 1817, 3d of *March*, 1803, and 26th of *March*, 1804,
establish that the navigable rivers and streams, through the
domain of the *United States*, shall be and remain public high-
ways; and that streams not navigable, having the opposite
banks owned by different persons, shall have their beds and
waters common to both.    The act of congress of the 19th of
*April*, 1816, is the act enabling the people of the *Indiana Ter-
ritory* to form a constitution and state government, and the
proviso to the 4th section declares, that the articles of the
ordinance of the 13th of *July*, 1787, are irrevocable, and that
the constitution and state government of the territory, when
formed, should not be repugnant to those articles; and the
ordinance of *Indiana* of the 29th of *June*, 1816, accepts the
propositions and conditions of that act of congress.

The state, by her statute of the 23d of *January*, 1829, and the
42d section of the statute respecting crime and punishment, of
the 10th of *February*, 1831, has enacted that any person or per-
sons, who shall erect and keep up, maintain, or continue, or who
may have erected and shall continue to keep up any mill-dam,
or other artificial obstruction in or across the bed or channel of
any navigable stream or river, and the bed or channel thereof
has not been surveyed and sold as land by the *United States*,—
shall, upon conviction by indictment, be fined in any sum not
less than 3 dollars nor more than 500 dollars, for each week
any such dam or artificial obstruction may have been kept up,
maintained, or continued.    This indictment is bottomed on those
statutory provisions of the state, and if they are unconstitutional,
the indictment and proceedings thereon must all fall.    We do
not however think they are unconstitutional.    The several
states of the *Union* are confederated together for national pur-
poses, yet they are in all other respects independent sovereign-
ties.    They retain their individual sovereignty, and with respect
to their municipal regulations, are sovereign in every sense of
the word, and independent of each other, and of the federal
government, except so far as those sovereign rights and powers
may have been surrendered or abridged, by the federal consti-
tution, or by compact.    They are not excluded from the exercise
of any power belonging to free and independent sovereignty,
except in three cases,—1. where a power is granted in exclusive

terms to the general government; 2. where the states are in express terms prohibited from the exercise of any power; and 3. where a power is granted to the general government, the cotemporaneous exercise of which by the states would be incompatible.   These state enactments, now under consideration, cannot fall under either of those heads.   The state has not passed her legal constitutional limits and infringed the rights of either her own citizens, or the rights of the citizens of other states; nor has she brought herself in collision with any act of congress, or with the judicial powers of the *United States*.

The general government has no right in, or controul or jurisdiction over those streams within this state.   It has disposed of all the right, controul, and jurisdiction it ever had, without any reservation.   It is true that the legal title still vests in the *United States;* but the possession, use, occupation, and jurisdiction have been surrendered.   The possession, use, and occupation, have been granted to the citizens of the several states and territories of the *Union,* and the *United States* stand seized, to their and each of their use and benefit, for the purposes contained in the grant.   The states severally, as states, have no right or property in them; but this state has jurisdiction over them, and over all persons navigating them, within the limits of the state, for all municipal purposes and regulations, except that she is prohibited by compact, from the right of converting them to any other use than public highways, and from obstructing them with any artificial obstruction, and from levying any tax, impost, or duty on any of those citizens who may navigate them.

The *United States'* constitution gives the general government power "to regulate commerce with foreign nations, and among the several states," and the counsel for the plaintiff in error insists, that under that power the general government has the right to legislate over all navigable streams, and that those state enactments come in conflict with that power.   We shall not at this time examine how far the general government, by legislative acts of congress passed for the purpose of regulating commerce, could controul state legislation over those streams; it is enough to know that no such acts have been passed.   Let this power be what it may, when properly exerted by acts of congress passed to regulate commerce, yet while it lies dormant, and is not so exerted, it cannot controul and restrain

state legislation. And even if the *United States* had so exerted this power, it would only controul and restrain such state enactments, as would conflict with the congressional statutes. These principles were settled in the Supreme Court of the United States, in the case of *Willson et al.* v. *The Blackbird Creek Marsh Company*, 2 Pet. Rep. 245. It appears rather strange, that it should be contended that the power and supremacy of the legislature to legislate for general and public purposes, and for the promotion of public good, should be called in question, unless there were some express constitutional prohibition. To oust the state of its sovereign right to legislate for the protection of those streams, by punishing persons obstructing them, and removing obstructions when necessary, it must be expressly shown that that power has been expressly surrendered by treaty, grant, or compact, or that it is in conflict with some prohibitory provision of the constitution of the *United States*, or that its exercise is incompatible with some jurisdiction of the *United States*, which they are in the immediate exercise of, and which has been granted to that government.

It is further insisted by the counsel for the plaintiff in error, that inasmuch as the *United States* have not surveyed and sold the bed of this stream as land, it still belongs to the *United States*, and stands on the same foot that the other unsold lands stand on, and that the state has no power to legislate over these public lands. To sustain this point, the case of *The People* v. *Godfrey*, 17 Johns. Rep. 225, is relied on. This position is not tenable: the premises from which the conclusion is drawn, are not correct. The bed of this stream does not stand on the same foot of the *United States'* unsold lands; there is no analogy whatever between them. The bed of this stream has been irrevocably disposed of, for express and certain uses and purposes, and cannot be sold by the *United States*. And as to the case of *The People* v. *Godfrey*, it is not in point. The question in that case was, whether the ground on which fort *Niagara* stood had been sold and conveyed to the *United States?* The federal constitution gives to congress "exclusive legislation over all places, purchased by the consent of the legislature of the state in which the same shall be, for the erection of forts, magazines, arsenals, dockyards, and other useful buildings;" and the difficulty in that case arose, in consequence of there being no legal evidence of the conveyance having been made.

May Term,
1833.

Cox
v.
The State.

The next point presented for the consideration of the Court is, that *Cox* being the owner of the banks of the river, is by the common law, the owner of the river, and has a right to occupy and use it, in any way or manner he pleases, for his own benefit. In support of this position, reference is made to *Hale's* treatise *De Jure Maris,* and the case of *The People* v. *Platt,* 17 Johns. Rep. 195. We have carefully examined those authorities, and think they do not establish the principle contended for. The case of *The People* v. *Platt,* is not, as to matters of fact, in point. In that case the river had been surveyed and sold as land; there was no reservation or deduction of the bed of the stream; the whole was computed as land, and sold as so many acres; the lines of the survey crossed the river, and the government patent covered the whole survey, including the river. The stream in every sense of the word was private property, not only in proprietary and ownership, but also in use, and not a common passage for the public. The Court, however, took a general view of the common law rights of bank proprietors, but we find nothing in it that sustains the plaintiff in error in this case. As to the treatise of Sir Matthew Hale *De Jure Maris,* we can only say, that in that treatise the learning concerning public property in the sea and rivers is exhausted, and that all the common law on the subject is collected, but we cannot perceive that it sustains the plaintiff in error in this case. At common law there are two classes of navigable streams,—1. navigable streams in which the tide ebbs and flows; on these, the rights of the bank owners extend only to high-water mark. The bank below high-water mark, and the whole bed of the stream, belong exclusively to the public. 2. navigable streams where the tide does not ebb and flow; on these, the bank proprietors have right and title to the centre of the stream, as they have in the soil on which a public highway on land runs, but the public have a right of way in the stream, as they have in a public highway on land, and the bank proprietors cannot interfere with that right of way, nor can they obstruct the stream, or divert it from its use as a public highway, nor can they make any use of it inconsistent with the public right of way. Hale, in his 2d and 3d chapters, in reference to the government's interest of jurisdiction, establishes the principle in direct language, that the government's jurisdiction over those streams in reference to

nuisances is, to reform and punish nuisances in all navigable rivers whether fresh or salt, and reform all obstructions to the common passage of ships, vessels, barges, or boats therein; for as common highways on the land, are of the common land passage, so these rivers whether fresh or salt that bear boats, are highways by water. But, says he, this jurisdiction is not in reference to the proprietary of the river, but to the public use; and therefore all nuisances and impediments of the passage of boats and vessels, may be punished by indictment and removed. The doctrines of the civil law were more uniform, and the rights of all riparian proprietors were the same, as it respected the ownership of navigable streams. There was no difference made between those navigable streams, where the tide did not ebb and flow, and those where it did. The exclusive right of the owner of the bank extended only to high-water mark, and the bank below high-water mark and the whole bed of the stream, belonged exclusively to the public, and no obstruction or diversion of the water was permitted. The principles of the common law have been recognized in eight or ten of the states, but in several others the principles of the civil law, to a very considerable extent, have been adopted. In this state, neither the principles of the common or civil law have as yet received any judicial sanction. The case now before us does not require us to pursue those easements and aquatic rights any further. The ordinance and statutes of congress, referred to in the forepart of this case, as well as both the common and civil law, settle this point beyond a doubt, against the plaintiff in error.

The next objection raised, is to the opinion of the Court below, declaring a certain statute of the state unconstitutional and void. The legislature of the state, by their act of the 13th of *January*, 1826, authorised *Cox*, the defendant below, to erect a mill-dam across the west branch of *White* river at the place in question; and the record shows, that, on the trial of the issue before the jury, that was offered in evidence to show that the defendant had a legal right to erect the mill-dam in question; but the Court rejected it, declaring it unconstitutional and void. The counsel for the plaintiff in error insists, that if the state has power to legislate over that stream for any purpose, it has for all purposes; that if the acts making it a penal offence to obstruct the stream, are constitutional, the act authorising the

erection of the mill-dam is also constitutional. The objection needs no examination. The investigation of the first point raised in this case, satisfactorily developes that this position is not tenable. The act now in question is clearly unconstitutional and void. The ordinance of congress of the 13th of *July*, 1787, which is made perpetual and irrevocable between this state and the *United States*, by the act of congress of the 19th of *April*, 1816, and the ordinance of *Indiana* of the 29th of *June*, 1816, puts it out of the constitutional power of either the state, or the *United States*, to authorise such an obstruction.

The next error assigned is, that the indictment is defective, and not sufficient in law to authorise the rendition of a judgment of guilty. This error is well assigned; both counts of the indictment are materially defective. Indictments for obstructing navigable streams must contain direct averments, distinctly stating the name of the river, and that so much of it as runs through and is situate in the county in which it is obstructed, is navigable and a common and public highway for all citizens, &c. to pass, repass, and navigate with their boats and vessels, &c., at their will and pleasure, without any artificial hindrance, impediment, or obstruction, &c. (*to which, under our statute, must be added, that* "*the bed or channel of which has not been surveyed and sold as land by the United States,*") the place where the obstruction is situated, &c., and that the matter complained of does hinder, impede, obstruct, &c. the passage of boats and vessels, &c. Many of these material averments are omitted in the indictment now under consideration, which renders it clearly defective.

There is, also, an objection raised to the verdict, but we think it useless to examine that question, as it involves no important abstract legal principle. We have gone over all the material and important points raised in the case, and have finally come to the conclusion, that the indictment is insufficient in law, and that the judgment of the Circuit Court must be reversed.

*Per Curiam.*—The judgment is reversed.

*H. Gregg*, for the plaintiff.

*P. Sweetser*, for the state.