WILLIAMS and Others *v.* BEARDSLEY and Others.

It was not the intention of the framers of the ordinance of 1787, in declaring the navigable streams of the north-western territory public highways, &c., to prohibit the making of such improvements as might be demanded by the public interest or convenience of the people of the states through which they flow, though some inconvenience might arise to those who were in the habit of using them in a particular manner before such improvements were authorized.

By the ordinance of 1787 it was provided that the *St. Joseph* river, where it is a navigable stream, should forever remain a public highway, and neither the *United States*, nor this state, have the constitutional power to authorize the building of a dam across such a stream and thus cause a total obstruction of navigation, but a state has power to regulate the use of public roads within its jurisdiction, and to authorize the construction of bridges and such other improvements as are not incompatible with the use of the stream as a public highway. .

If a bridge is built, and it is necessary for the convenience of the public, and does not prevent the free use of the stream as a public highway, although it may have occasioned some slight inconvenience to those who had been in the habit of navigating the stream by obliging them to take some additional precautions in passing it, it will not, therefore, be necessarily considered a nuisance.

. APPEAL from the *Elkhart* Circuit Court.

SMITH, J.—This was an action on the case by the appellants against the appellees.. The declaration alleges that on, &c., at the county of *Elkhart*, in this state, the said defendants did erect, maintain, and keep up a certain bridge which was a nuisance to the free navigation of the *St. Joseph* river, a navigable stream running within the territories of the states of *Indiana* and *Michigan*, whereby said navigation was endangered; and that afterwards a boat of the plaintiffs, laden with a large quantity of flour, while passing at and by said bridge, unavoidably, and notwithstanding all reasonable care and diligence was used by the plaintiffs' servants to steer said boat in safety under and beyond the bridge, was stove against the timbers thereof, whereby said boat and cargo were lost, to the plaintiffs' damage, &c. Plea, not guilty. Verdict and judgment for the defendants.

It appears, by a bill of exceptions, that the plaintiffs

requested the Court to give the following instructions to the jury:

The plaintiffs had and have a right to navigate the *St. Joseph* river with any craft, which the character of the river did or does admit, without any regard whatever to the bridge mentioned in the declaration; and if that bridge, in any manner, obstructed the navigation of the river, neither they nor any other persons navigating said river were under any obligation to build, man, or equip their boats in any manner different from what they would do, or would have done if said bridge had not been built.

The erection of the bridge mentioned in the declaration, if it in any degree endangers the navigation of the said *St. Joseph* river, is a public nuisance; and if the boat and cargo of the plaintiffs were stove against the bridge while the crew were endeavoring to navigate the boat according to their best judgment, the plaintiffs are entitled to recover such damages as they may have proved were occasioned thereby, against such of the defendants as are proved to have erected, or to have aided in erecting, said bridge.

In passing the aforesaid bridge it was only requisite for the pilot and hands navigating the said boat, to endeavor, and, so far as they could, to prevent being stove against said bridge; but no error in judgment on the part of said pilot, even if it be admitted to exist, should, of itself alone, prevent the plaintiffs from recovering, and nothing short of *wilful* neglect, or of negligence so gross as to be evidence of wilful neglect, while navigating said river and passing said bridge, should prevent the plaintiffs' recovery.

If it is, or was, at the time of the accident usual and customary for pilots to inquire, when navigating down said river, about the stage of the *Elkhart*, and the pilot of the boat, mentioned in the declaration, made such inquiry, and took all the precautions usual with pilots navigating said river, in informing himself with regard to such

stage, this is all the diligence which could be required of the plaintiffs relative thereto, if it were all which it was usual to take.

These instructions the Court refused to give in the terms above stated, but instructed the jury as follows:

The plaintiffs had and have a right to navigate the *St. Joseph* river with any craft which the character of the river did or does admit, without regard to the bridge mentioned in the declaration, if that bridge impeded the navigation, or if the general and public advantages arising from its erection did not greatly exceed any slight inconvenience arising therefrom; and with this qualification, that they were under no obligation to build, man, or equip their boat in any manner different from what they would have done if said bridge had never been built.

The erection of the bridge, if it impeded or endangered the navigation, is a public nuisance, unless the general and public advantages arising therefrom exceed its inconvenience in the manner above stated; and if the boat and cargo of the plaintiffs were stove against it, while the pilot and crew were endeavoring to navigate it according to their best judgment, and without gross carelessness, or gross want of skill, the plaintiffs are entitled to recover such damages as they may have proved were occasioned thereby, against such of the defendants as are proved to have erected or to have aided in the erection of said bridge.

In passing the aforesaid bridge it was only requisite for the pilot and hands navigating said boat to use ordinary care and skill to prevent being stove against it.

If it was, at the time of the accident, usual and customary for skillful pilots, when navigating down said river, to inquire about the stage of the *Elkhart*, and the pilot of the boat mentioned in the declaration made such inquiries, and took all the precautions usual with skillful pilots navigating said river in informing himself with regard to such stage, and in managing his boat in pursuance therewith, this is all the diligence which would be required relative thereto, so far as the acts of the pilot in the manage-

ment of the boat were consistent with ordinary care and skill, being governed by such information.

The question whether a permanent erection in a navigable stream is a nuisance, is a question of fact for the jury to determine, for it would not be a nuisance if it did not impede the navigation, or if the general and public advantages arising from its erection greatly exceeded any slight inconveniences arising therefrom.

In the ordinance of 1787, concerning the territory of the *United States* north-west of the *Ohio* river, it is declared that "the navigable waters leading into the *Mississippi* and *St. Lawrence*, and the carrying places between the same, shall be common highways, and forever free, as well to the inhabitants of said territory as to the citizens of the *United States*, and of those of any other states that may be admitted into the confederacy, without any tax, impost, or duty therefor."

Every public road is equally a public highway, and, in this respect, no distinction can be drawn between the right to pass up and down and across the river in the one instance, or along or across the road in the other.

The evidence offered by the parties is not upon the record, but it is stated by the bill of exceptions that the instructions refused as well as those given were applicable and relevant to the case, if correct in point of law.

The principle contained in the instructions given, of which the appellants complain is, that a permanent erection in a navigable river may not be a nuisance if the general and public advantages arising from it greatly exceed any slight inconveniences which it may occasion. They contend that, under the ordinance of 1787, quoted in the instructions given, anything whatever erected in the stream of a navigable river which, in the slightest degree, impedes or hinders the passage of boats suited to the character of the river, is a nuisance; and that individuals have the right to navigate the river without paying any regard to such obstructions, and to be indemnified for all losses thereby sustained, unless such losses were occasioned by willful negligence. This is the substance

of the instructions requested by them, but which were qualified by the Court in the manner above stated.

The appellants, indeed, admit the necessity of there being bridges over such streams as the *St. Joseph*, but say such bridges must be built at the peril of those who erect them, and who thus become insurers to individuals navigating the river, against all losses they may incur by reason of such obstructions.

We do not think the ordinance of 1787 will reasonably bear such a construction. In declaring the navigable streams of the north-western territory public highways, and providing that, as such highways, they should forever remain free to all the inhabitants of the *United States*, without payment of taxes or imposts, it could not have been the intention of the framers of the ordinance to prohibit the making of such improvements as might be demanded by the public interest, or convenience of the people of the states through which they flow, and which would not prevent their free use as public highways, though some inconveniences might result to those who were in the habit of using them in a particular manner before such improvements were authorized. A wharf, or other improvement intended for the common benefit or advantage of those navigating the river, might prove an inconvenience, or even an obstruction, to some who had been previously navigating it in a particular mode and manner; and we are not prepared to indorse to its full extent the instruction the Court did give, that persons using the river would be under no obligation to alter or modify their vessels or equipments, in order safely to navigate the stream after such an improvement had been made. Possibly the improvement might be of such a beneficial character to the public in general, that it could not be considered a nuisance even if some individuals were required to make changes in their mode of using the navigation; but as this instruction was, so far as it goes, in favor of the plaintiff, it is not necessary that we should give any decision as to its correctness.

There is no question made as to whether the bridge

May Term,
1851.

WILLIAMS
v.
BEARDSLEY.

was so constructed as to occasion an unreasonable hindrance or obstruction to the navigation of the river; and we think the instructions given were at least as favorable to the plaintiffs as they had a right to demand.

There is nothing upon the record by which we are informed by what authority the defendants erected the bridge in question; and as the evidence is not before us, we must presume in favor of the instructions of the Court—that it appeared upon the trial they had such authority as could have been given them under the state laws, without violating the compact contained in the ordinance of 1787. By that compact it was provided that the *St. Joseph* river, where it is a navigable stream, should forever remain a public highway; and it has been decided by this Court, in *Cox* v. *The State*, 3 Blackf. 193, that neither the *United States* nor this state have the constitutional power to authorize the building of a dam across a stream, and thus cause a total obstruction of the navigation. A similar decision also has been made by the Supreme Court of *Ohio;*          , 5 Ohio R.    ; but it has never been doubted that a state has power to regulate the use of public roads within its jurisdiction, and to authorize the construction of bridges, or other improvements, necessary for the convenience of those using the highway, or of those who are under the necessity of crossing it. See *Moor* v. *Veazie*, S. C. of *Maine*, Dec. 1850. In the present case we have supposed that this power is limited to the authorizing of such improvements as are not incompatible with the use of the stream *as* a public highway; and it is true the question of nuisance does not depend upon the amount of public benefit conferred by the bridge; but if the bridge was necessary for the convenience of the public, and did not prevent the free use of the stream as a public highway, even although it may have, in the language of the instructions, occasioned some slight inconvenience to those who had been in the habit of navigating the stream, by obliging them to take some additional precautions in passing it, we think it would not, therefore, be necessarily a nuisance.

*Per Curiam.*—The judgment is affirmed with costs.

J. B. *Howe*, for the plaintiffs.

J. *Morrison* and S. A. *Major*, for the defendants.