### THOMAS JAKEWAY v. DAVID BARRETT.

*Adverse Possession. Boundary. Jurisdiction. Statute.*

It is perfectly well settled that an actual adverse possession continued for fifteen years, by one having even no color of .title, will divest the true owner of his title, even when he is in possession of a portion of the land covered by his title in such manner that he would have constructive possession of the residue, except for his actual disseizin by the adverse holder.

So far as such actual occupation extends, it is equally effectual as an ouster of the owner, and a proper foundation of title by adverse possession, without color of title as with.

Where the dispute is one of boundary merely, when one party has occupied to a boundary beyond the true limits of his deed, and conveys according to his deed, his deed conveys to the purchaser according to the boundary he has claimed and occupied to.

The plaintiff's claim as to the boundary line held to be correct, the court holding that his west line not only extended along the line of low water mark on Lake Champlain, but on the line of low water mark of the waters emptying into the lake which ordinarily maintain the same level as the lake.

Upon the question whether justices have jurisdiction in actions involving the title to land, it is *held*, that the jurisdiction depends upon the nature of the action, and whenever the declaration is of such a character that under the general issue, or any other plea merely putting the plaintiff to the necessity of proving his declaration, he is bound to either prove or disprove a title to land, then the .jus-

tice has no jurisdiction to try the case. But where the declaration is such as not to require the proof of title to land to sustain it, and such question only comes into the case by reason of some special line of defence, then the justice is not ousted of his jurisdiction to try the action.

THIS was an action of trespass, for taking and carrying away two stacks of marsh hay. Plea, not guilty, with a notice annexed to the said plea that the defendant would on trial, prove that the hay in question was cut and stacked on the land of the defendant. Trial by the court by the consent of the parties, at the Rutland County Court, September Term, 1864, KELLOGG, J., presiding.

It appeared on the trial that the hay in question was cut by the plaintiff on the marsh in or adjoining Lake Champlain, at or near a place called Orton's Bay, a bay of said Lake in the town of West-haven ; that the marsh or land on which the hay was cut lay on the east side of the lake, and that an arm or bay of the lake at this point extended to the eastward for some considerable distance ; and that, in times of high water in the lake, this bay was filled with water covering the said marsh, but that when the water in the lake was low, or in times of low water, the water in the bay receded and formed a small creek or brook of from ten to twenty feet in width. It was conceded that the hay was cut by the plaintiff on the land or marsh south of this brook. It also appeared that for some distance south from the brook, the ground was marshy, and, for some of the way, covered with small trees and stumps, and that, on the south side of the marsh, three points of head land extended from the south northward, with low marshy ravines intervening between them. The plaintiff owned land south from this marsh and the defendant owned land north from it. The plaintiff introduced as evidence a copy of a deed, duly certified, from Eliada Orton to Harvey Church, dated February 9th, 1821, conveying three separate parcels of land. The defendant introduced as evidence a copy of a deed, duly certified, from Harvey Church to Aaron Gibbs, dated December 10th, 1828, conveying land bounded by the following description, viz : " Bounded on the east by a line running from a birch tree standing in the south line of Aaron Gibbs' land one hundred rods west ten degrees north of a stake and stones standing in the south-east corner of Aaron Gibbs' land ; thence south ten degrees west sixty-three rods to a stake and stones ; thence west ten degrees north thirty-six rods to a stake

in the marsh; thence south ten degrees west seventy-four rods to the west bank of the marsh adjoining Lake Champlain; bounded on the south by the lake or land of Joseph Smith, deceased; on the west by Lake Champlain, and north by land owned by Aaron Gibbs, containing fifty acres of land, be the same more or less." The defendant also introduced a deed from Jonas Gibbs, administrator of the estate of Aaron Gibbs, to the defendant and David B. Barrett, dated July 7th, 1857, conveying a certain parcel of land in said Westhaven by the following description, viz: "Being a part of the land conveyed by Eliada Orton to Harvey Church, and the same land conveyed by said Church to said Aaron Gibbs by his deed dated December 10th, A. D. 1828, and recorded on book 4th at page 230, of Westhaven records of deeds, containing fifty acres, be the same more or less, reference being had for a more particular description of said premises to said Harvey Church's deed, meaning hereby to convey all of said premises of which said Aaron Gibbs died seized." The defendant also introduced evidence tending to prove that Aaron Gibbs in his life time claimed to own south to a line being a continuation of the south line of lot No. 27 of the first division, hereinafter referred to, through westerly to the lake, and proved certain acts of occupancy by the said Aaron Gibbs on the land lying between said line and the brook or channel of the bay.

The plaintiff introduced a duly certified record copy of a survey bill of the first, second, and third divisions in Westhaven laid to the proprietary right of Stephen R. Bradley, describing and locating the same with the following boundaries, viz: "Beginning at the southeast corner of lot No. 27, division first; from thence south ten degrees west seventy rods to a stake; thence west ten degrees north fifty-three rods; thence south ten degrees west one hundred and thirty-two rods to a staddle; thence west ten degrees north two hundred and fifty-two rods to Lake Champlain; thence northward on said lake to the south-west corner of said lot No. 27, division first; thence to the bounds of beginning." The plaintiff also introduced as evidence a deed from Beriah Mitchell to David Pierce and Benjamin Pierce, Jr., dated January 5th, 1782, conveying the first, second and third division lots belonging to the said proprietary right of Stephen R. Bradley, and also a succession of subsequent conveyances

making a regular chain of title from the said David Pierce and Benjamin Pierce, Jr., down to himself of that part of the tract or parcel of land described in the said survey bill which lies next south of said lot No. 27, and the said bay called Orton's bay. The plaintiff proved an undisputed actual possession, by himself and his predecessors in the title, of a part of the last mentioned tract or parcel of land for a period of nearly forty years, and he also introduced evidence tending to prove acts of ownership on that part of the marsh lying south of the brook or channel of the bay, by himself and his grantors. The plaintiff also introduced evidence proving that the bay or brook constituted a good and sufficient natural fence, and that the piece of marsh land in controversy which lies south of said bay or brook was not separated by any fence from the land cultivated and occupied by the plaintiff. The beginning point in the survey bill introduced as evidence by the plaintiff was at the south-east corner of a lot known and called as the Cook lot. The court also found that the corner mentioned as the south-west corner of said lot No. 27, division first, and the southerly end of the said course or line of seventy-four rods, as described in the deed from Harvey Church to Aaron Gibbs, were together, making one and the same corner, and it appeared that this corner was on the hard land, or head land, about twenty feet from the marsh or the line or high water mark, and that from this corner to the center of the brook or the channel of the bay was a distance of about six rods. The plaintiff cut two stacks of marsh hay in the season of 1862 on that part of the marsh which was south of the brook, and stacked the same on that part of the marsh on which it was cut; and, on the 8th of December, 1862, the defendant took the two stacks, and drew the same away, and converted the same to his own use.

The court were not satisfied, and did not find, that the deeds from Eliada Orton to Harvey Church, and from Harvey Church to Aaron Gibbs, above mentioned, extended over or were intended to include, any portion of the marsh south of the brook or channel of the bay; but did find that Aaron Gibbs claimed to own south to a line which would be a continuation of the south line of said lot No. 27, division first, through westerly to the lake, and that, under his claim, he occupied the portion of the marsh lying south of the brook in such

a manner and for such a length of time as to gain a title by adverse possession as against the plaintiff to that part of the marsh where the hay was cut by the plaintiff, if his acts of occupancy under this verbal claim of title on his part are to be treated as the court decided they were to be treated, as acts of ownership, when so long continued, and not as mere acts of trespass by him.

The plaintiff claimed that the survey bill of the first, second, and third divisions of the proprietary right of Stephen R. Bradley would, after reaching the lake, follow along the lake and bay at the low water mark of the same to the south-west corner of lot No. 27, division first. But the court was of opinion, and decided, that the line in said survey bill after reaching the lake, being bounded on the lake alone, followed the shore of the lake in the nearest and most direct course to the said south-west corner of lot No. 27, division first, and that this line did not include any part of the marsh within the bounds of the survey bill. But if the line in said survey bill after reaching the lake should follow at low water mark on the lake and the brook around to the last mentioned corner, then that part of the marsh lying south of the brook, on which the said hay was cut, would be included within the limits of said survey bill. The court also was of opinion, and decided, that the plaintiff, though having a sufficient claim of title by occupancy under the survey bill to support his constructive possession to the several points of head land or hard land which extended northerly into the marsh, could not extend his constructive possession over the marsh, or beyond the line which the survey bill followed.

On the opposite page is a plan showing the line as claimed by the defendant, beginning at the birch tree and striking the lake at a point marked (A). The line marked "Line as claimed by plaintiff," on the plan, is the line of low water mark of Orton's Bay and the brook emptying into the lake. The territory between that line and the line marked "Line as claimed by defendant," is the territory on which the hay was cut and the territory in dispute. The plaintiff claimed that his line on the lake beginning at *a* extended along the shore of the lake out to the line of low water mark of Orton's Bay and the brook to the corner marked *b* on the plan, which is the south-west corner of lot No. 27.

Jakeway *v.* Barrett.

Aaron    Gibbs'    land.

N. W.                    ✦          Birch tree.

N. E.

63 R.

36 R.

74 R.          Lot No. 27.

*Orton's Bay.*

Line as claimed by plaintiff.   *Brook.*

Disputed territory.

| 1 |   | 2 |   | 3 | b

Line as claimed by defendant.        S. E.

Lake Champlain.
(A)

1, 2, 3, are hard headlands
extending into the marsh.

N

W——|——E

Jakeway.

a, b, Jakeway's Line northward
on the lake to the south-west
corner of lot No. 27.

S

a

The plaintiff also claimed that even if the survey bill did not follow along the lake and bay at low water mark around to the southwest corner of lot No. 27, division first, as he claimed that it did, still he was entitled to the beneficial use of the low land lying north of high water mark and south of the low water line of the brook or channel of the bay, so far as the same was susceptible of beneficial private use; but the court decided that the plaintiff by virtue of his title to the land lying above or south of said high water mark on the bay had no right to the use of the low or marsh land lying below or north of said high water mark on said bay except such as he held in common with the defendant and all other citizens of the state.

To the several decisions of the court above stated the plaintiff excepted. The court decided that the defendant, on the facts in the case as above stated was justified, under the deed from the administrator of Aaron Gibbs to himself and David B. Barrett, in taking and carrying away the two stacks of hay, and in converting the same to his own use; and accordingly rendered judgment in favor of the defendant. To this last mentioned decision, and to the said judgment the plaintiff also excepted.

The case was originally commenced before a justice of the peace, but was brought into the county court by appeal. The defendant, at the same term, filed a motion in writing to dismiss the suit for the alleged reason that it was originally commenced before a justice of the peace and came into the county court by appeal, " when, as appears by the copy of the record of the justice, as well as from the pleadings in the cause, that the title of land is concerned in the said suit.". The court overruled and denied the motion to dismiss, for the reason that the facts alleged therein as the cause for allowing the same did not appear as set forth in said motion. To this decision the defendant excepted.

*R. C. Abell*, for the plaintiff.

*H. G. Wood* and *John Prout*, for the defendant.

The opinion of the court was delivered by

POLAND, Ch. J. The construction placed by the court upon the original survey of the land, (which by a series of conveyances came to the plaintiff,) we think was erroneous.

The case of *Fletcher* v. *Phelps*, 28 Vt. 257, decided that lands bounded on Lake Champlain extend to the edge of the water at low water mark, and that the same rule applies to lands near the lake bounded on a creek emptying into it, and the waters of which ordinarily maintained the same level, and rise and fall of the lake. Applying the principle of that decision to the facts of this case, and following the line of low water from the point where the line first strikes the lake to the corner where the line ends on the banks of the creek or brook, includes within the survey the piece of marsh land on which the plaintiff cut the hay for which this suit was brought. The plaintiff and his predecessors in title, having been for many years in possession of the high land covered by the survey and deeds, he was by law invested with a constructive possession of all that his deeds covered.

But it is perfectly well settled that an actual adverse possession continued for fifteen years, by one having even no color of title, will divest the true owner of his title, even when he is in possession of a portion of the land covered by his title, in such manner that he would have constructive possession of the residue, except for his actual disseizen by the adverse holder. The court found that Aaron Gibbs, under whom the defendant claims title, " occupied this piece of marsh in such a manner and for such a length of time as to gain adverse possession of it as against the plaintiff." The exceptions do not state the character and extent of this occupation by Gibbs, but we must assume that it was of such a character as to justify and sustain this finding and conclusion of the court. If the plaintiff claimed it was not, he should have procured the facts to be specially stated on the exceptions, as the burden is on him to establish error in the judgment of the court below. The only question that seems to have been made as to this possession, was whether Gibbs not having any color of title to this marsh land, could gain a title by an adverse actual occupancy. Of this there is no doubt; the authorities are uniform upon that subject. The effect of having color of title is sometimes to extend by *construction* a possession beyond the *actual* occupation, and sometimes to change the character of casual acts of entry upon land from mere acts of trespass, to acts of possession. But so far as actual occupation extends, it is equally

effectual as an ouster of the owner, and a proper foundation of title by adverse possession, without color of title, as with. The court we think correctly held that the deeds from Orton to Church, and Church to Gibbs, did not extend over the creek or brook, so as to cover the marsh land on the south side. The plaintiff claims that if Aaron Gibbs occupied the marsh south of the creek or brook so as to gain a title by adverse possession, that it was not conveyed to the defendant by the deed from Gibbs' administrator, as that deed refers to the deeds by which the land was conveyed to Gibbs for a description of the land conveyed. But the case shows that Gibbs claimed that his title under his deed extended to a line far enough south to cover the marsh land in question, and occupied claiming under his deed. The dispute was one of boundary merely, and in all such cases where one has occupied to a boundary beyond the true limits of his deed, and conveys according to his deed, his deed conveys to the purchaser according to the boundary he has claimed and occupied to. If this were not so it would practically put an end to the settlement of boundary lines by occupation, where the title had been changed into other hands by conveyances.

This doctrine is specially applicable to cases like this, where the boundary given by the deed is somewhat equivocal, and where its true original construction is now stoutly contested. The defendant was properly held entitled to stand upon and hold to the boundary to which Gibbs had claimed and occupied.

This view of the case renders it unnecessary to decide the question raised upon the defendant's motion filed in this court, to dismiss the action, because the justice before whom it was brought had not jurisdiction of it, but as the question has been raised and argued, we have thought best to dispose of it, hoping to relieve the question of the doubt apparently resting upon it.

Our statute gives justices jurisdiction of all actions of a civil nature where the debt or other matter in demand does not exceed two hundred dollars, with certain exceptions, among which, are actions "where the title to land is concerned." This action was trespass *de bonis*, for taking and carrying away hay. There was nothing upon the face of the plaintiff's declaration, or in the nature of his action, that gave any indication that any question would be involved con-

cerning the title to land, any more than in an action of trespass for taking a horse.

The pleadings of the defendant and the defence actually set up, did involve the title to land.

Now how is this question of jurisdiction to be determined, and when? In *Whitman* v. *Town of Pownal*, 19 Vt. 223, the action was for damages caused by the insufficiency of a highway, and it was objected that a justice of the peace had no jurisdiction of such an action because the title to land was concerned. But the court decided that in actions of that nature the title to land was not so concerned as to oust the justice's jurisdiction. The question was raised in that case by a motion to dismiss founded upon the facts set forth in the declaration, and before any pleading to the action.

DAVIS, J., who pronounced the opinion of the court, says, that in that condition of the case "the question is to be determined, from a consideration of the nature of the action, as it appears from the declaration itself." But farther on in the opinion he says : " The language of the statute does not reach any particular form of action ; it does not rest the exclusion of jurisdiction upon any abstract possibility of the occurrence of a question of title, but it is made to depend upon the fact, whether, without reference to the nature of the action, it is actually in controversy."

And again he says in the same case : " It is left then to be determined by the pleadings subsequent to the declaration, whether it comes within the statute." According to this rule the action should be dismissed, as the defendant's pleadings and evidence distinctly put in issue the title to land. But it is to be noticed, that what is said by the judge was not necessary to the decision of the case.

But in a subsequent case of *Haven* v. *Needham et al.*, 20 Vt. 183, HALL, J., says : " It is obvious that the title of land may incidentally come in question in various forms of action,—as for instance, in assault and battery, where the defendant justifies the assault in defence of his freehold. I apprehend that in such a case the jurisdiction of the justice would not be arrested, but that he should proceed to hear and determine the title, so far as it affected the rights of the parties in the suit, in the same manner that the matter would be heard and determined in a superior court. But if from the nature

of the suit, as shown by the declaration, the title to land must directly and necessarily be concerned, the prohibition must have effect." So in *Shaw* v. *Gilfillan*, 22 Vt. 565, the rule recognized on this subject is, that when the plaintiff under the plea of the general issue would be required to establish a title to land in order to recover, then the justice has no jurisdiction.

Upon principle, and upon the decisions, we think the jurisdiction depends upon the nature of the action, and that wherever the declaration is of such a character, that under the general issue or any other plea, merely putting the plaintiff to the necessity of proving his declaration, he is bound to either prove, or disprove a title to land, then the justice has no jurisdiction to try the case. But when the declaration is such as not to require the proof of title to land, to sustain it, and such question only comes into the case by reason of some special line of defence, then the justice is not ousted of his jurisdiction to try the action. There is hardly any form of action in which the title or ownership of land may not incidentally arise, and it would be productive of infinite confusion and mischief to hold that in all actions whenever that is the case the jurisdiction ceases, and the parties are remitted to a new litigation in another forum.

All our cases where it has been decided that a justice had not jurisdiction, can stand upon this ground. *Hastings* v. *Webber*, 2 Vt. 407, was an action for breach of covenant in a conveyance of land.

*Whitney* v. *Bowen*, 11 Vt. 250, was a case for erecting a fence so near the plaintiff's house as to obstruct his windows.

*Haven* v. *Needham*, cited above, was for obstructing a stream of water and causing it to overflow the plaintiff's land.

*Shaw* v. *Gilfillan*, cited above, was an action brought to recover for the expense of building the defendant's half of the division fence between his lands and those of the plaintiff.

In each of these cases a denial of the plaintiff's declaration would require him to prove title, or want of title, to land in order to recover. The motion must therefore be overruled.

The judgment is affirmed.