DELAPLAINE and another vs. THE CHICAGO & NORTHWESTERN RAILWAY COMPANY.

RIPARIAN RIGHTS, *especially on navigable lakes, and as against railroads built by authority of the state.*

1. It is the settled law of this state, that the proprietor of lands on a navigable stream takes *usque ad filum aquæ*, subject to the public right of navigation, which includes the right of the public to improve, regulate and control the bed of the stream, and the flow of the waters therein, in the interest of navigation and commerce.

2. The riparian proprietor upon navigable lakes and ponds takes the land only to the water's edge. *Diedrich vs. N. W. U. R'y Co.*, decided herewith.

3. The riparian proprietor upon a navigable lake has, as such, the exclusive right of access to and from the lake in front of his land, and of building there piers and wharves in aid of navigation, not interfering with the public easement; and these private rights grow out of his title to the land, and have a pecuniary value; and their destruction or material abridgment is in general an injury, entitling him to redress.

4. Whether the legislature can authorize a railroad company to destroy or materially impair private riparian rights, without making compensation, is not here considered.

5. If the charter of the defendant company, by authorizing it to build a railway between certain points, confers authority to occupy for that purpose the bed of a navigable lake situate between those points, there is nothing in such charter indicating a legislative intention to relieve the company from its common-law liability in case of injury to a riparian owner.

6. Plaintiffs own lots abutting upon a navigable lake in this state; and defendant, without their consent, constructed its railway within the water of the lake, but so near the front of their lots as to cut off their access to the body of the lake, leaving along such front a pool of stagnant water; and by reason thereof, said lots have been greatly depreciated. *Held,* that plaintiffs are entitled to recover damages for the injury. *Chapman v. O. & M. R. R. Co.,* 33 Wis., 629, approved and followed.

APPEAL from the Circuit Court for *Dane* County.

The case as stated in the complaint was this: Plaintiffs were the owners of a parcel of land in the city of Madison, bounded on one side by Lake Monona, a navigable body of fresh water, about nine miles in circumference. As such, they were entitled at all times to have free access, by themselves and their servants, with boats and otherwise, to and from said lake, upon every part of their said land, and to have the water of the lake flow uninterruptedly to the line of their land as it had always been accustomed to do, and to enjoy all the other rights and privileges of riparian proprietors upon navigable waters. In 1870, defendant, without plaintiffs' consent, and without any other authority than was conferred upon it by its act of incorporation and the acts amendatory thereof (which acts are recited by their titles, etc.), constructed its railway over and through said Lake Monona, upon piles driven

through the water into the bed of the lake, and thereafter filled the space so occupied, with earth, up to, or near to, the surface of the water. Said railway intersects the Chicago, Milwaukee & St. Paul railway (which also crosses said lake), at a point in the lake south of plaintiffs' lands, and passes along and in front of said lands, running to the northwestern shore of the lake, which it strikes at a point about twenty rods northeast of the most northeasterly part of plaintiffs' lands. By this means, access from said lands, by the waters of said lake, to any part thereof, except that small portion lying between defendant's railway and that of the Chicago, Milwaukee & St. Paul Company, between the points where such railways respectively touch the northwestern shore of the lake, has been entirely cut off, as well as access from the body of the lake to said lands; and the waters so confined by the trestlework and embankment of said railway have become stagnant, unwholesome and offensive, and said lands are depreciated to the amount of $20,000, for which plaintiffs demand judgment.

A demurrer to the complaint, as not stating a cause of action, being overruled, defendant answered, denying the injury, and alleging that it had authority, under its charter and the laws of this state, to construct its road across Lake Monona in the manner alleged.

At the trial, both parties introduced evidence bearing upon the question of depreciation in the value of plaintiffs' land resulting from the construction of defendant's road. After the testimony was closed, defendant moved the court to dismiss the complaint, and for judgment of nonsuit, for the following reasons: 1. That plaintiffs have no private rights in the nature of property in the water of the lake, or in the soil under it. 2. That no part of their property had been taken. 3. That no negligence or fault had been shown or imputed to defendant, in respect to the manner of constructing or operating its railroad. 4. That it had not been proven that plaintiffs had sustained any damages recoverable under the complaint.

The motion was denied.  Instructions were then given, to which no exception was taken; the jury found for the plaintiffs, assessing their damages at $625; and from a judgment in pursuance of the verdict, the defendant appealed.

For the appellant, a brief was filed by *William Ruger*, and the cause was argued orally by *George B. Smith*, *F. J. Lamb* and *Mr. Ruger*.  The argument included the following among other points:  1. Sec. 9, ch. 45, Laws of 1852, as amended by ch. 21, Laws of 1853, authorizes the Beloit & Madison R. R. Co. to locate, construct and operate its railway " on the most eligible route" between Beloit and Madison; and these rights have passed to the defendant by virtue of its consolidation with the first named company under ch. 370, P. & L. Laws of 1866.  By §§ 1 and 4, ch. 76, Tay. Stats. (p. 1036), all railroads in this state are empowered to construct their roads across, along or upon any stream of water, watercourse, road, highway, street or canal.  Subd. 5, sec. 11, ch. 119, Laws of 1872, is to the same effect.  By § 23, ch. 76, Tay. Stats. (p. 1040), and sec. 27, ch. 119, Laws of 1872, the state grants to all railway companies whose roads are constructed " through any university lands, school lands, swamp and overflowed lands, owned and held by the state," the right to take and use, for the purposes of a railroad, a strip of land one hundred feet wide across each tract of said lands over which such road is constructed.  If the letter of these two acts does not grant a right of way and specific authority to construct defendant's road across the bay of Lake Monona, still such is their spirit, and, as laws *pari materia*, they are aids to the construction of the general powers conferred by the charter.  And, the corporation having exercised reasonably and in good faith (as is not disputed) the discretion given by its charter in selecting the most eligible route between Beloit and Madison, the authority to construct this road across Lake Monona is as certain and ample as though it had been conferred by specific mention.  Cooley's Con. Lim., 538, and note 1; *Ford v. Railroad Co.*,

14 Wis., 617; *People v. Smith*, 21 N. Y., 595. Moreover, the grant of authority to construct a railway between given termini implies a grant of a right of way over all the public domain lying on the route, whether held by the state as proprietary owner, or by the right of eminent domain, unless the state has already appropriated it to public uses forbidding the inference of such an intent. *Boston Water Power Co. v. Railroad Co.*, 23 Pick., 360; *I. C. Railway Co. v. State*, 3 Ind., 421, 425–6; *Att. Gen. v. Railroad Co.*, 4 C. E. Green, 386; *Pa. R. R. Co. v. N. Y. & L. B. R. R. Co.*, 8 id., 158–160: *U. S. v. Bridge Co.*, 6 McLean, 517–18, 522, 524, 530–38; *Clinton City v. Railway Co.*, 24 Iowa, 455; *A. & G. Railroad Co. v. Mann*, 43 Ga., 200. 2. This authority secures immunity from liability for *mere consequential injuries*. No liability attaches for such injuries resulting from acts lawful as against the party injured. Cooley's Con. Lim., 384–5; Wood on Nuisances, §§ 746, 748, 753, 867. The only limitation of the legislative power in this regard, is the provision requiring compensation to be made for property taken; and this has no application to acts which merely result in consequential injuries. As the constitution now stands, it is the exclusive province of the legislature to say whether compensation shall be made for injuries of the latter kind. And, the legislature having seen fit to authorize the defendant to build its road over Lake Monona without requiring it to make compensation in any case except where property is taken, the court will not insert in the statute a further and different requirement. 10 Wis., 165; 22 id., 59; 28 id., 70, 71. In support of these views, counsel cited Cooley's Con. Lim., 541–3; Sedgwick on Con. and Stat. Law, 519–523; Potter's Dwarris, 393; 1 Redfield on Railways, 294, pl. 1, 2, note 4; Pierce on Am. R'y Law, 171, 198; Dillon on Mun. Corp., §§ 556–7, 576–7; Wood on Nuisances, §§ 753, 757; *Stadler v. Milwaukee*, 34 Wis., 98; *Cushman v. Smith*, 34 Me., 257–260; *Rogers v. Railroad Co.*, 35 id., 319; *Whittier v. Railroad Co.*, 38 id., 26; *Boothby v. Railroad Co.*, 51 id.,

320; *Richardson v. Railroad Co.*, 25 Vt., 465, 472–6; *Hatch v. Railroad Co.*, id., 49, 58–68, and note; *Bailey v. Railroad Co.*, 4 Harring., 389, 393–8, 404–5; *In re Phil. & T. R. R. Co.*, 6 Whart., 25, 43–6; *Henry v. Bridge Co.*, 8 Watts & S., 85; *Monongahela Nav. Co. v. Coon*, 6 Pa. St., 382; *Mifflin v. Railroad Co.*, 16 id., 192–3; *N. Y. & E. Railroad Co. v. Young*, 33 id., 175, 180–1; *Patten v. Railway Co.*, id., 426; *Reitenbaugh v. Railroad Co.*, 21 id., 105; *Freeland v. Railroad Co.*, 66 id., 91, 96–8; *Fitchburg Railroad Co. v. B. & M. Railroad Co.*, 3 Cush., 88; *Davidson v. Railroad Co.*, id., 92–5, 105–6; *Proprietors etc. v. Railroad Co.*, 10 id., 385, 388–392; *B. & W. Railroad Co. v. O.C. Railroad Co.*, 12 id., 605–6, 609–10; *Stevens v. Railroad Co.*, 5 Vroom, 536–545, 549–553; *Lansing v. Smith*, 8 Cow., 146–151; *Arnold v. Railroad Co.*, 49 Barb., 108; *Pumpelly v. Green Bay Co.*, 13 Wall., 176–181. 3. No part of plaintiffs' *property* has been *taken*. The state holds the title to the lake, including the waters and bed thereof, by the right of eminent domain, in trust for the public, to be devoted to such public use as the state may see fit; and riparian owners, as such, have no private right or interest therein. They may, perhaps, acquire certain rights and interests in the water and bed adjacent to the shore by an express grant, or by an investment of money, as in the construction of a pier or wharf, on the faith of a license expressly conferred by the state or implied from the custom of the country. Where such a license exists and has become executed by an investment made upon the faith of it, a riparian owner, *or any other person* so acting upon the license, probably acquires vested rights even as against the state. But all such rights are founded upon the principles of law applicable to executed licenses and prescriptions. Hall on the Sea Shore, 15, 18–20, 26–7, 34–5; *Den v. Jersey Co.*, 15 How. (U. S.), 426; *Weber v. Harbor Comm'rs*, 18 Wall., 57. If plaintiffs had erected a wharf along their lake front pursuant to a valid license or custom, it would be their private property; and an obstruction which

would prevent its use might be deemed a taking. *Yates v. Milwaukee*, 10 Wall., 504, and other cases, stand on this ground. But nothing of this kind appears here. It is merely claimed that plaintiffs have a private right of access upon their land, to and from the waters of the lake at large, and also a private right to have the waters flow to and from their lands as in their natural state. (1) The first right claimed is a confusion of two different rights, viz., the *private* right of being upon the land, and the *public* right of going upon or into the water. If once rightfully upon the land at the water's edge, a stranger would have the same right to pass therefrom to the water as the land-owner. So all persons may go upon or into public waters from public grounds. The right as respects the water is therefore public, and not incident to ownership of the shore. If it were otherwise, where would the private right end, and the public begin? Would one leaving his land on the shore of Lake Michigan be in the exercise of a private right until he reached the other shore? It has been said that the right to pass to and from private property and the portion of a public way in *immediate proximity*, is a private right, while the right of passage in approaching or leaving, when once upon the way, is a public right. This distinction is unsound and impracticable. Where will you draw the line, and on what principle sustain it? If the deprivation of the public right prevents one from passing from the boundary of the public way to his property, or from the boundary of his property to the way, and thereby prevents his making any beneficial use of his property, it may be that it would constitute a taking; if not, he would have no right of action. But if the attempted distinction were sound and practicable, it would not avail the plaintiffs here. They have unobstructed access to the lake, and are only obstructed in the public right of navigation at a considerable distance from the shore. And the taking away of a public right, by the state, gives no private action. (2) The alleged pollution of the

waters of the lake, or obstruction to their flow, is not an invasion of plaintiffs' private rights. If plaintiffs have no private rights or interest in the waters, they have no greater right to an action based upon what is done in or to those waters, than they would have to an action based upon what might be done to or upon the land of an adjacent owner. No action will lie in either case, unless what is done amounts to a *private nuisance*, or causes *physical injury* to plaintiffs' land. No such case is made here, either in the complaint or the evidence. If the present action would lie, riparian owners whose lands are not flowed or physically injured might maintain actions for obstructions to the flow of navigable waters by any dam, bridge or other like structure erected by authority of law. No such case can be found where a recovery has been had. Where the land-owner owns the *alveus* of the stream or lake, indeed, he has a special usufructuary interest in the water, for all uses to which he may choose to apply it, not inconsistent with the rights of others; and an unlawful obstruction to the flow, or a pollution of the water, in such a case, is an invasion of his private property rights. But the case is very different where the land-owner does not own the *alveus* of the lake or stream. In support of these views counsel cited Angell on Watercourses, §§ 42, 59; Hall on the Sea Shore, 2–9, 12–50, 178–9; Wood on Nuisances, §§ 592–601, 605–7, 609, 614–15; *State v. Gilmanton*, 9 N. H., 461; *Martin v. Waddell*, 16 Pet., 367; *Pollard's Lessee v. Hagan*, 3 How. (U. S.), 220; *Rundle v. Canal Co.*, 14 id., 80; *Den v. Jersey Co.*, 15 id., 426; *Dutton v. Strong*, 1 Black, 25–6; *Railroad Co. v. Schurmeir*, 7 Wall., 272; *Yates v. Milwaukee*, 10 id., 504; *The Daniel Ball*, id., 562–3; *Weber v. Harbor Comm'rs*, 18 id., 57; *Atlee v. Packet Co.*, 21 id., 389, 395; *Stevens v. Railroad Co.*, 5 Vroom, 536–545, 549–553; *Bailey v. Railroad Co.*, 4 Harring., 395–6, 405; *Tomlin v. D. B. & M. R. R. Co.*, 32 Iowa, 106; *Kearnes v. Cordwainers' Co.*, 95 E. C. L., 388; *Lansing v. Smith*, 8 Cow., 146, 151; *People v. Canal Ap-*

*praisers*, 33 N. Y., 461–7, 500; *Kellinger v. Railroad Co.*, 50 id., 206; *Commonwealth v. Charlestown*, 1 Pick., 182–7; *Arimond v. Canal Co.*, 31 Wis., 338–9. Counsel also criticised the decision in *Chapman et al. v. Railroad Co.*, 33 Wis., 629, contending that, so far as it may be taken to intimate that the plaintiffs there had any rights as riparian owners in the navigable waters of Fox river, it is erroneous and was not called for by the facts of that case. He also criticised the case of *Duke of Buccleuch v. Metropolitan Board of Public Works*, 2 Moak's Eng. R., 448, arguing that it was entirely unnecessary in that case to determine whether the plaintiff's right of access to the water was a public or a private right, or whether he had any rights as regards the flow or adjacency of the water, and that all intimations of opinion on those questions were mere *dicta*, because the Thames Embankment Act, and the Lands Clauses Act incorporated therewith, under which the defendant proceeded, expressly gave plaintiff a right to the compensation claimed by him, irrespective of those questions. 4. Even if the construction and operation of that portion of defendant's railway here in question were wholly unauthorized, this action could not be maintained. Conceding that a railway operated in the ordinary way, without authority, would be a private nuisance as to property physically affected, or so near that the beneficial use or enjoyment of it would be materially interfered with, this is not such a case. The claim here is not for an interference with the use or enjoyment of the plaintiffs' property, but for a depreciation of its value, caused by an obstruction to the public right of navigation, and an alleged pollution of the waters, amounting to a public nuisance, and causing no special injury to plaintiffs.

For the respondents, a brief was filed, signed by *P. L. Spooner* and *Vilas & Bryant*, and there was oral argument by *Mr. Vilas* and *Mr. Spooner*. They contended, 1. That even if plaintiffs' title to the soil does not extend below low-water mark, they are entitled to the rights of riparian pro-

prietors upon navigable water, among which are a right to the undisturbed flow of the water along the front of their property, and that of access from their lots to the body of the lake. *Chapman v. O. & M. R. R. Co.*, 33 Wis., 629; *Bowman's Devisees v. Wathen*, 2 McLean, 376–382; *Duke of Buccleuch v. Metropolitan Board of Works*, 2 Moak's Eng. R., 448; *Yates v. Milwaukee*, 10 Wall., 504. It is said that in the Duke of Buccleuch's case it was the taking of the causeway or jetty, in which the duke had an easement, that gave him a *locus standi* for claiming damages for the injury to the remainder of the property. Admitting that the act of parliament was so worded that he could not have recovered for the depreciation caused to his property by interposing a roadway instead of the river along the whole front, had it not been for the destruction of the jetty, this does not affect the question of his riparian rights. Parliament is omnipotent, and can take private property for public use without compensation to the owner, who is obliged to yield up his right upon such terms as the act prescribes. But if the duke had no riparian rights such as are recognized in the opinions of the several judges in that case, then the arbitrator was manifestly wrong in awarding 5,000*l*. for the depreciation of the property caused by the embankment or roadway which deprived him of "access to the stream along his whole frontage," and not merely at the spot where his jetty projected. And if it were necessary that some part of the land of the riparian proprietor should be taken in order to entitle him to compensation for depriving him of the rights which attend riparian ownership, the doctrine of *Gould v. Hudson River R. R. Co.*, 6 N. Y., 522, would not be unsound, as it was held to be in *Chapman v. Railroad Co.*, *supra*. 2. That there is nothing in the defendant's charter, or the other statutes upon which it relies, giving defendant a right to construct its road so as to cut off all communication between plaintiff's land and the lake. Such a legislative design "will not be deduced from the words

of any statute, either general or special, except when it contains language not susceptible of any other rational construction." *Per* DEPUE, J., 5 Vroom, 536, concurred in by BEASLEY, C. J., 553. See also *Hickok v. Hine*, 23 Ohio St., 523; *Springfield v. Railroad Co.*, 4 Cush., 63; *Fall River I. W. Co. v. Railroad Co.*, 5 Allen, 221; *Barnes v. Racine*, 4 Wis., 454. In the act under which defendant claims the power to construct its road in front of plaintiffs' land, we find nothing more specific than this: that it may erect or construct its road along or upon any stream of water, watercourse, road, highway or canal which it may touch or intersect; but in every instance the said stream of water, watercourse, road, highway or canal shall be finally restored to its former usefulness. This language does not show the legislative intent claimed, but repels the presumption of such an intent. 3. That it will not be presumed that the legislature, in authorizing a corporation to construct a work of public improvement for private emolument, and for this purpose to take property upon making compensation, designed to exempt the corporation from its common-law liability for injuries resulting from its acts. *Tinsman v. B. D. R. R. Co.*, 2 Dutch., 148; *Trenton Water Power Co. v. Raff*, 7 Vroom, 335, 340, 342; *Hooker v. N. H. & N. Co.*, 15 Conn., 317–323; *Fletcher v. A. & S. R. R. Co.*, 25 Wend., 462; *Williams v. N. Y. Cent. R. R. Co.*, 16 N. Y., 97; *Trustees v. A. & R. R. R. Co.*, 3 Hill, 567; *Alexander v. Milwaukee*, 16 Wis., 254–5. 4. That the injury which plaintiffs have sustained is special, and distinct from that suffered by the public. *Stevens v. P. & N. R. R. Co.*, 5 Vroom, 532; *Walker v. Shepardson*, 2 Wis., 384; *Barnes v. Racine*, 4 id., 454; *Tate v. O. & M. R. R. Co.*, 7 Ind., 479; *Lansing v. Smith*, 4 Wend., 9.

COLE, J. In a number of decisions made by this court, it has been held that the proprietor of lands on navigable streams takes *usque ad filum aquœ*, as the boundary of his estate,

subject to the public easement or right of navigation. It is not deemed necessary now to discuss or allude to the principles on which these adjudications rest; it is sufficient to say that this was the rule laid down in *Jones v. Pettibone*, 2 Wis., 308, decided in 1853, and the same doctrine has been often reaffirmed since. *Walker v. Shepardson*, 2 Wis., 384; *S. C.*, 4 id., 486; *Mariner v. Schulte*, 13 id., 693; *Arnold v. Elmore*, 16 id., 510; *Harrington v. Edwards*, 17 id., 586; *Yates v. Judd*, 18 id., 119. So far as the rights of the public are concerned, it is obvious that it makes little difference whether the riparian proprietor is regarded as holding to the center of the stream, or whether his title terminates at the margin thereof; because, in either case, the public has the right to improve, regulate and control the bed of the stream and the flow of the waters therein, in the interest of navigation and commerce. *Wisconsin River Improvement Co. v. Lyons*, 30 Wis., 62; *Arimond v. The Green Bay & Mississippi Canal Co.*, 31 id., 316. The title of the riparian proprietor in the bed of the stream itself is subject to this power of the public over the stream, as in the case of an ordinary highway by land. The question as to the ownership of the soil under the water, or in the bed of the stream, is one which each state is at liberty to determine for itself, in accordance with its views of local law and public policy; and if it chooses to concede the right of the riparian owner to the center of the stream, " it is not for others to raise objections." *Barney v. The City of Keokuk*, 4 Otto, 324. But though this rule obtains in regard to the ownership of the bed of navigable streams, the case is quite different when we consider lands situated upon and adjacent to large lakes and other natural collections of fresh water which are navigable and adapted for the transportation by boats of the products of the country. There are dicta and decisions which hold, in reference to such bodies of water, that the riparian proprietor takes only to the edge of the water in its ordinary condition, when unaffected by winds

or other disturbing causes (*Canal Comm'rs v. People*, 5 Wend., 423; *S. C.*, 17 id., 571, 597; *State v. Gilmanton*, 9 N. H., 461; *Jakeway v. Barrett*, 38 Vt., 316; *Austin v. Rutland R. R. Co.*, 45 id., 215; *Seaman v. Smith*, 24 Ill., 521; Angell on Watercourses, § 42), the proprietorship of the bed of the lake being in the state. This view commends itself to our judgment as sound and correct, and we have accordingly decided in the case of *Diedrich v. The Northwestern Union Railway Co.* (which will be announced at the same time as this), that the water's edge is the boundary of the title of the riparian proprietor. The reasons for limiting the boundary to that line are fully stated in the above authorities, and need not be dwelt upon here. See, also, the opinion of Manning, J., in *Rice v. Ruddiman*, 10 Mich., 126–143.

But while the riparian proprietor only takes to the water line, it by no means follows, nor are we willing to admit, that he can be deprived of his riparian rights without compensation. As proprietor of the adjoining land, and as connected with it, he has the right of exclusive access to and from the waters of the lake at that particular place; he has the right to build piers and wharves in front of his land out to navigable waters in aid of navigation, not interfering with the public use. These are private rights incident to the ownership of the shore, which he possesses, distinct from the rest of the public. All the facilities which the location of his land with reference to the lake affords, he has the right to enjoy for purposes of gain or pleasure; and they oftentimes give property thus situated its chief value. It is evident from the nature of the case, that these rights of user and of exclusion are connected with the land itself, grow out of its location, and cannot be materially abridged or destroyed without inflicting an injury upon the owner which the law should redress. It seems unnecessary to add the remark, that these riparian rights are not common to the citizens at large, but exist as incidents to the right of the soil itself adjacent to the water. In other

words, according to the uniform doctrine of the best authorities, the foundation of riparian rights, *ex vi termini*, is the ownership of the bank or shore.   In such ownership they have their origin.   They may and do exist though the fee in the bed of the river or lake be in the state.   If the proprietor owns the bed of the stream or lake, this may possibly give him some additional right; but his riparian rights, strictly speaking, do not depend on that fact.

This whole subject is so ably and forcibly discussed and illustrated in the opinions of the law lords in *Lyon v. Fishmongers' Co.*, L. R., 1 App. Cas., 662, that we cannot more clearly express our views upon it than by quoting some of their remarks.   One question considered in the case was, whether a riparian proprietor on the bank of a tidal navigable river had rights or natural easements similar to those which belong to a riparian proprietor on the bank of a natural stream above the flow of the tide; and whether such proprietor, whose frontage and means of access to such tidal river is cut off by an encroachment from adjoining land into the stream, suffers a loss or abridgment of any private right belonging to him as riparian proprietor, or is only damnified in common with the rest of the public.   The Lord Chancellor (Lord CAIRNS), after fully stating the facts of the case, among other things, said: "Unquestionably the owner of a wharf on the river bank has, like every other subject of the realm, the right of navigating the river as one of the public.   This, however, is not a right coming to him *qua* owner or occupier of any lands on the bank, nor is it a right which, *per se*, he enjoys in a manner different from any other member of the public.   But when this right of navigation is connected with an exclusive access to and from a particular wharf, it assumes a very different character.   It ceases to be a right held in common with the rest of the public, for other members of the public have no access to or from the river at the particular place; and it becomes a form of enjoyment of the land, and

of the river in connection with the land, the disturbance of which may be vindicated in damages by an action, or restrained by an injunction.   *   *   *   I cannot entertain any doubt that the riparian owner on a navigable river, in addition to the right connected with navigation to which he is entitled as one of the public, retains his rights as an ordinary riparian owner, underlying and controlled by, but not extinguished by, the public right of navigation."   pp. 671–3.

Lord CHELMSFORD observed: "The Lords Justices said they were unable to find any authority for holding that a riparian proprietor, where the tide flows and reflows, has any rights or natural easements vested in him similar to those which have been held in numerous cases to belong to a riparian proprietor on the banks of a natural stream above the flow of the tide. But, with great respect, I find no authority for the contrary proposition, and I see no sound principle upon which the distinction between the two descriptions of natural streams can be supported.   And it appears to me that cases have been decided which are strongly opposed to it.   Why a riparian proprietor on a tidal river should not possess all the peculiar advantages which the position of his property with relation to the river affords him, provided they occasion no obstruction to the navigation, I am at a loss to comprehend.   If there were an unauthorized interference with his enjoyment of the rights upon the river connected with his property, there can, I think, be no doubt that he might maintain an action for the private injury."   pp. 677–8.

Lord SELBORNE said: "Upon principle, as well as upon those authorities," which he had referred to, "I am of opinion that private riparian rights may and do exist, in a tidal navigable river .... But the rights of a riparian proprietor, so far as they relate to any natural stream, exist *jure naturæ*, because his land has, by nature, the advantage of being washed by the stream; and if the facts of nature constitute the foundation of the right, I am unable to see why the law should

not recognize and follow the course of nature in every part of the same stream.... With respect to the ownership of the bed of the river, this cannot be the natural foundation of riparian rights properly so called, because the word "riparian" is relative to the bank, and not the bed of the stream, and the connection, when it exists, of property on the bank with property in the bed of the stream depends, not upon nature, but on grant or presumption of law. .... The title to the soil constituting the bed of a river does not carry with it any exclusive right of property in the running water of the stream, which can only be appropriated by severance, and which may be lawfully so appropriated by every one having a right of access to it. It is, of course, necessary for the existence of a riparian right, that the land should be in contact with the flow of the stream .... Even if it could be shown that the riparian rights of the proprietor of land on the bank of a tidal navigable river are not similar to those of a proprietor above the flow of the tide, I should be of opinion that he had a right to the river frontage belonging by nature to his land, although the only practical advantage of it might consist in the access thereby afforded him to the water, for the purpose of using, when upon the water, the right of navigation common to him with the rest of the public. Such a right of access is his only, and is his by virtue and in respect of his riparian property; it is wholly distinct from the public right of navigation." pp. 682–4.

After this lucid and most satisfactory exposition of the foundation of riparian rights, showing that they are appurtenant to the ownership of the land on the shore or bank of the lake or stream, without reference to the title in the bed, it remains to determine whether, in case these rights are wholly destroyed or materially lessened in value by a railroad company in the construction of its road, the injury to the riparian proprietor is actionable. It was claimed by the learned counsel for the defendant company, that, because it

was authorized by its charter to build a road between certain designated points, it had the right to occupy, in the construction of its road, any land of the state between those points, in other words, had the right to build its road across the lake in the manner it did, and, if an injury has resulted to the riparian owner, it is *damnum absque injuria*. It may be conceded, for the purposes of the argument, that the company had the right by its charter to occupy the bed of the lake in the construction of its road; but this does not imply an intention on the part of the legislature to relieve the company from its common-law liability in case of injury to a riparian owner. Whether the legislature could, under the constitution, authorize the company to destroy or materially impair riparian rights without making compensation, is a question we need not consider, as there is nothing to warrant the assumption that the legislature attempted to do this. The legislature doubtless intended that the company, in the execution of its chartered powers, would make compensation for any damage inflicted upon a landowner, where a liability was imposed at common law. The simple question, therefore, is, If the plaintiffs' riparian rights were destroyed or materially impaired by the construction and maintenance of the defendant's railway across Lake Monona, are they entitled to recover damages therefor? This question, we think, must receive an affirmative answer.

There was an answer put in by the defendant denying all liability under the circumstances, and the cause was tried upon the merits. But the main question discussed on the argument was, the sufficiency of the complaint, and the alleged error in overruling the demurrer to it. The cause of action stated in the complaint in substance is, that the plaintiffs own lots abutting upon Lake Monona, a navigable body of water, and that the defendant, without their consent, constructed its road within the water of the lake, but so near the front of their lots as to cut off their access from the lots to the body of

the lake, leaving in front of their lots a pool of stagnant water, by which the lots have been depreciated in value. This plainly shows an interference with the natural flow or action of the water; an obstruction of the access to and from the lots of the plaintiffs to the body of the lake. It states a permanent injury to their property, diminishing its market value. We are at a loss to understand why the plaintiffs should not recover such damages for this infringement upon or destruction of their riparian rights, as they may prove they have actually sustained. These riparian rights are undoubted elements in the value of property thus situated. If destroyed, can any one seriously claim that the plaintiffs have not suffered a special damage in respect to their property, different both in degree and in kind from that sustained by the general public? It seems to us not.

The case of *Chapman v. The Oshkosh & Miss. R. R. Co.*, 33 Wis., 629, is a direct authority that such damages are actionable. The doctrine of that case was sharply criticized on the argument as unsound, and an attempt was made to distinguish it from the case at bar. But in principle the cases are not distinguishable, so far as the claim for damages founded on the deprivation or destruction of riparian rights was concerned. In that case, these rights were held to be property, of which the plaintiffs could not be deprived without compensation. The plaintiffs there owned several lots fronting on Fox river, a navigable stream, which they used in connection with their saw mill, for getting logs from the river to their mill, and in shipping lumber therefrom. The railroad company, by authority of the legislature, built a bridge over the river in such a manner as to cause an interruption or breakage of the river front. This obstruction to the access of the river and the natural connection of the land with the water, it was held, furnished ground for a claim for compensation on the part of the owners. In that case, as in this, riparian rights were directly interfered with, which the owners of the prop-

erty on the bank were entitled to enjoy and retain in connection with their premises, and which rights enhanced the market value of their property. We thought then, and think now, that the owners were entitled to compensation for this damage or injury. We consider the decision well sustained by principle and authority. It is powerfully vindicated by the case of *Lyon v. Fishmongers' Co., supra*, decided in the House of Lords in 1876.

It is admitted that there are decisions of able and intelligent courts holding a contrary rule, and denying all right to compensation in such cases to the riparian owner. And, in addition to the authorities cited in Chapman's case taking that view of the question, is the case of *Stevens v. Paterson & Newark R. R. Co.*, 34 N. J., 532, which decided that an owner of land adjoining the Passaic river, a public navigable stream, might be deprived of all his riparian rights and the benefits incident to his property from its contiguity to the water, without compensation. But in that case there is an able and learned opinion given by the chancellor, dissenting from the doctrine held by the majority of the court, and stating the rule of law as laid down in Chapman's case. The chancellor observes: "The right of an owner of land upon tide waters to maintain his adjacency to it and to profit by this advantage, is founded upon a natural sense of justice which pervades the community, which, although the decisions of courts may overcome, neither they nor the subtle and artificial reason of learned jurisconsults will ever eradicate." p. 556. But we are not inclined to prolong the discussion on this point, and close with the remark that if the matter were *res integra*, unaffected by decision, we should hold that the destruction of or material interference with riparian rights was, upon principle, an actionable injury.

In Chapman's case, among other authorities relied on to sustain the decision there made, was the case of the *Duke of Buccleuch v. The Metropolitan Board of Works*, L. R., 5 H.

L., 418. It is claimed that the doctrine of that case is inapplicable to the question before us, because it arose under what is called the *Lands Clauses Consolidation Act*, which gave damages in case land was "*injuriously affected*" by any work authorized by the act. But the test applied to determine the proper meaning of the words "injuriously affected," as giving a right to compensation, was, whether the act done in carrying out the works in question was an act which would have given a right of action if the works had not been authorized by act of parliament. *Lyon v. Fishmongers' Co.*, *supra*; *Metropolitan Board of Works v. McCarthy*, L. R., 7 H. L., 243. In other words, if the act affecting the land had been done by an individual, he would be liable for the damages. This remark shows that the decisions made under that act are in point.

We have observed that the injury complained of in this case was special and peculiar to the plaintiffs, within the authorities, and not suffered by the public generally. It follows from these views that the judgment of the circuit court must be affirmed.

*By the Court.* — Judgment affirmed.