White, J.
The ruling of the courts below is in accordance with the decision of this court in Gavit v. Chambers decided in 1828. 3 Ohio, 496. In that case it was held, that in this ■■state the owners of land situate on the banks of navigable ■streams running through the state, are also owners of the bods of the rivers to the middle of the stream, as at common law. The same doctrine has been recognized in subsequent cases, and has become a rule of property in this state. Lamb v. Rick *406 ets, 11 Ohio, 311; Walker v. Board of Public Works, 16 Ohio, 544. The rule is in accordance with the doctrine of the-common law, which regards all non-tidal streams, that are navigable in fact, as mere highways ; and the same rule prevails in. most of the states.
In Jones v. Soulard, decided in 1860, the rule was applied •by the supreme court of the United States, to the Mississippi river. In speaking of the rule, it is said in the opinion : “We-■think this as a general rule too well settled, as part of the American and English law of real property, to be open to discussion ; . . . The doctrine, that on rivers where the tide ebbs and .•flows, grants of land are bounded by ordinary high-water mark, hás no application in this case; nor does the size of the river alter the rule. To hold that it did, would be a dangerous tampering with riparian rights, involving litigation concerning the-size of rivers as matter of fact, rather than proceeding on estab'lished principles of law.” 24 How. U. S. 65. See also, Delaplaine v. C. & N. W. R’y Co., decided in 1877, by the supreme-court of Wisconsin, 42 Wis. 214; and Braxton v. Bressler, decided by the supreme court of Illinois in 1872, 64 Ill. 488.
In Sloan v. Biemiller, 35 Ohio St. 492, it was held that the rule did not apply to Lake Erie and its bays; and a similar-ruling was made in Wisconsin, in Delaplane v. C. & N. W. N. W. R'y Co., supra.
The plaintiffs in error rely on the case of Railroad Company v. Schurmier, decided by the supreme court of the United States in 1868. 7 Wall. 272.
In that case it was declared that the common law rules off riparian ownership did not'apply, under the acts of congress,, to lands bordering on navigable non-tidal streams, where the-title to such lands is derived from the United States.
Rut in the subsequent case of Barney v. Keokuk (94 U. S. 338), it is said, whether, as rules of property, it would now be-safe to change the doctrines of the common law where they have been applied, is for the several states themselves to determine. “ If they choose to resign to the riparian proprietor,, rights, which properly belong to them in their sovereign capacity, it is riot for others to raise objections.”
*407 The common law doctrine, having been incorporated into the jurisprudence of this state at so early a day, and having been regarded as a rule of property for more than half a century, it onglit not now, irrespective of the question of its original correctness, to be disturbed., To disturb the rule now, “wouldbe •a dangerous tampering with riparian rights.”
The decision in Gavit v. Chambers related to the Sandusky river, the same river that is involved in the present case; but the land in question in that case was surveyed and sold under the act ci May 18, 1796. Ohio Land Laws, 35. In the present case the land was surveyed and sold under the act of April 26, 1816. 3 U. S. Statutes at Large, 308.
It is contended on behalf of the plaintiffs in error, that the decision in Gavit v. Chambers does not apply to the act last named. It is true the case arose under the former act, but the doctrine of the common law which it lays down in regard to the rights of jiparían owners must be kept in view in giving construction and application to the act now in. question.
It is admitted in the agreed statement that “ none of the sjibdivisional lines of the sjirvey extended to, or embraced the bed of the river, but that, on the contrary, all of the sub-divisional lines approaching the river were so ran as to extend only to certain points on the bank of the river, at greater or less distances from the margin of the water, which points are designated by the survey as corners to the respective subdivisions of the reservation. And also that the river was meandered on the bank thereof, to and from said respective corners.”.
That the meander-lines ran in surveying portions of the public lands bordering upon navigable rivers, are run, not as boundaries of the tract, but as a means of ascertaining the quantity of land to be paid for by the purchaser1, was decided in Railroad Company v. Schurmeir, supra. The meandej’-line, therefore, in the present instance, not being a boundary line, the only boundary was the river; aud the question is, when the boundary line of a riparian owner is thus described, where is it to be located? Gavit v. Chambers answers, at the middle of the stream, as at common law.
The act -n question provided for the survey and sale of the *408 tract of two miles square, at the lower rapids of the Sandusky river, ceded by the Indians to the United States, by the treaty of Greenville.
The second section provided that, previously to the disposal of the tract,' the surveyor-general should re-survey and mark the exterior lines of the tract, conformably to a survey previously made. It also required him “to cause divisional linos to be run through 'each fractional section, and that of the adjoining quarter section, so that each subdivision, having one front on the ri/oer, may contain, as near as may be, eighty acres. And in like manner to cause the large island, lying in the west half of section number one, to be surveyed, and the same to 'be divided into two equal parts.”
One of the provisos in the section is, “ That in no case shall the subdivisional lines be so run as to extend to, or'embrace the bed of the river, which shall be deemed, and is hereby declared to be, a public highway.”
The third section provides, “ That dll the leund contained within the aforesaAd cession, of two miles square, shall, with the exception of as many town lots and out-lots as in the opinion of the secretary of the treasury may be necessary to reserve for the support of schools within the same, and with the exception also of the salt springs, and the land reserved for the use of the same, be offered for sale to the highest bidder,” &c. It is also pi’ovided that “the divided quarter sections and fractional sections shall not be sold for less than two dollars per acre; the in-lots for less than twenty dollars each, nor any out-lot for less than at the rate of five dollars per acre.”
It seems to us that the only exceptions or reservations from sale intended by the act, were the lots for the support of schools, the salt springs, and the land for the use of the same, and the use of the river for the purposes of a highway.
In the argument for the plaintiffs in • error, stress is laid on the provision requiring the snbdivisional lines to be so run as not to extend to or embrace the bed of the river. But if it was intended not to embrace the1 bed of the river as land to be paid for, which’ was in accordance with the policy of the government, it was necessary Tor the line's'tó-be thus run, in order *409 to ascertain the quantity of land in each subdivision and the •amount- to be paid therefor by the purchaser.

Judgement affirmed.