## ENOS vs. HAMILTON and others.

*Obstruction of navigable stream.—Liability of master for unlawful act of servant, done under direction of a third party.*

1. Whether the legislature can authorize the blockade of a navigable stream by booms, *quære.*
2 But chapter 190, Private and Local Laws of 1865, does not attempt to confer any such authority.
3. Where defendants' servants, while running logs for them, wrongfully obstructed therewith a navigable stream, by direction of an officer of a boom company, defendants are liable for damages resulting to plaintiff.

APPEAL from the Circuit Court for *Winnebago* County.

Action for damages resulting to plaintiff from the alleged act of defendants in obstructing the Wolf river with logs and timber a short distance above the village of New London, for about six weeks in the summer of 1867, and so preventing plaintiff from passing up said river from his tannery at New London, and procuring bark at the "Red Banks," about sixty miles above that village. The complaint alleges that the Wolf river, between the two points named, is a navigable stream;

and it also contains allegations of special damage to plaintiff from the obstruction complained of. On the trial, the navigable character of the stream, its obstruction by logs and timber belonging to defendants, and in charge of their servants, and the damages resulting to plaintiff, were shown; but defendants proved that their logs were held in the river (by means of a boom) so as to obstruct it, not by their order, but in obedience to the direction of one George, who was acting as boom-master on said river, under the authority of the "Wolf River Boom Company;" and ch. 101, Pr. & L. Laws of 1857, and ch. 190, Pr. & L. Laws of 1865, were put in evidence to show the authority of that company. The act last mentioned, after authorizing said company to construct and maintain booms on Wolf River, or any of its bayous, "at any point between Lake Poygan and section 17, town 22 north, range 15 east," and after empowering it to make a cut across the "Ox-bow bend," on said river, "for the free passage of boats, rafts and cribs of all descriptions," and to boom said river at the head and foot of such cut, "*provided*, that said booms shall in nowise interfere with the free navigation of said river," provides further, as follows: "Section 2. Owners of logs or timber shall drive such logs or timber into such booms or bayous as the boom-master of said company may direct; and said boom-master shall have power to stop any or all drives of logs or timber by giving timely notice to parties having charge of the said drives. Parties having charge of said drives of logs or timber shall stop the same until said boom-master shall notify them that such boom or booms as are designed for their occupation are in readiness. But if said parties shall disregard said notice * * then said owner or owners of said logs shall assume all the risk * * of securing said logs," etc., etc. The court, at the request of defendants, instructed the jury that, if the obstructions complained of were created by and under

the direction of the boom-master of the Wolf River Boom Company, and were continued by his direction during the time in which the damages to plaintiff accrued, and were not created or continued by or under the direction of the defendants, or either of them, plaintiff could not recover. It also refused the following instructions asked by plaintiff: "1. If the Wolf river is a navigable stream between plaintiff's tannery and the Red Banks, where his bark was, and if the employees of the defendants, who had charge of their logs, obstructed the navigation of the river so as to prevent plaintiff from passing up the river for the purpose of getting such bark, plaintiff is entitled to recover. 2. Upon the above state of facts plaintiff is entitled to recover, even if said employees put in such obstructions by order of the Wolf River Boom Company, or the boom-master thereof." Verdict and judgment for defendants; and plaintiff appealed.

*Gabe Bouck,* for appellant, to the point that the principal is liable for the malfeasance of his agent in the course of his employment, although the former did not authorize, or even if he forbade, the act, cited Story on Agency, §§ 308, 452; Smith on Master and Servant, 151; Paley on Agency, 294; 1 Redf. on Railways, 511; *Bush v. Steinman,* 1 Bos. & Pul. 403; *Fletcher v. Braddick,* 5 id. 182; *Lowell v. B. & L. R. Co.,* 23 Pick. 24; *Stone v. Codman,* 15 id. 297; *Yates v. Brown,* 8 id. 23; *Bussy v. Donaldson,* 4 Dallas, 206; *Duggins v. Watson,* 15 Ark. 118; *Seymour v. Greenwood,* 7 Hurl. & Nor. 355; *Hale v. Railway Co.,* 6 id. 299. Counsel also contended that the charter of the boom company does not confer any authority to obstruct the navigation, nor any authority to control the owners of logs, except so far as the latter choose to employ the booms of said company.

*Coleman & Thorp,* for respondents:

1. By the charter of the Wolf River Boom Company, the boom-master had power to stop defendants' drive

of logs. Secs. 1 and 2, ch. 190, Pr. & L. Laws of 1865. The legislature have power to regulate and control all public highways and navigable waters, so far as the public interest and convenience requires. Sedgw. on Stat. & Con. Law, 510; *Barnes v. City of Racine*, 4 Wis. 454, 466; *Cobb v. Smith*, 16 id. 661; *Wood v. Hustis*, 17 id. 416; *Comm. v. Breed*, 4 Pick. 464; *Spring v. Russell*, 7 Greenl. 292; *Hutchinson v. Thompson*, 9 Ohio, 52; *Williams v. Beardsley*, 2 Carter (Ind.), 591. 2. If the legislature could not confer this power, and if the company exercised it, and the men in charge of the logs acted under the directions of the company in good faith, without the knowledge of the defendants, the company is liable, and not the defendants. The master is not liable for the wrongful act of his servant, which does not concern his duty to his master. 2 Kent's Com. (3d ed.) 290; 2 Hilliard on Torts, 436; *Middleton v. Fowler*, 1 Salk. 282; Story on Agency, 456; *Southwick v. Estes*, 7 Cush. 386; *McManus v. Crickett*, 1 East, 106; *Richmond Turnpike Co. v. Vanderbilt*, 1 Hill, 480; *Foster v. Essex Bank*, 17 Mass. 479, 505; *Wright v. Wilcox*, 19 Wend. 343. 3. The persons who placed these obstructions in the river were acting for the boom company, and under its direction. They could not at the same time have acted for defendants in that particular act. 5 Barn. & Cress. 315, 326; 6 M. & W. 499; *Stevens v. Armstrong*, 2 Seld. 435; 14 Pick. 1.

COLE, J. In our opinion there is nothing in chapter 190, Private & Local Laws of 1865, which gives the boom company authority to blockade with their booms the free navigation of Wolf river. That river is a navigable stream, and it would be a very serious question whether the legislature could confer any such power upon the company, even if it had attempted to do so in plain, unequivocal language. But it is very manifest that the charter was not intended to grant any such

power. On the contrary, in the first section, which authorizes the company to construct and maintain booms on Wolf river, is this express limitation, that the booms so constructed "shall in no wise interfere with the free navigation of said river." If this language in the charter did not place the question beyond all doubt, that the legislature never intended to confer the power upon the company to obstruct by its booms the navigation of the river, the clause in the section in regard to making the cut would. That clause empowers the company "to make a cut across what is known as 'Oxbow bend' on said river, above the village of Northport, in the county of Waupacca, for the free passage of boats, rafts and cribs of all descriptions;" and also "to boom the said Wolf river at the head and foot of said cut;" then follows the proviso containing the general restraining power just cited. So, as if through greater caution, the legislature, in effect, made the right to boom the river at the head and foot of the cut depend upon the fact that the company previously made an artificial channel across "Oxbow bend," for the accommodation of the public. This alone would show that it was not intended•that the navigation of the river should be obstructed by the booms which the company might build; but the proviso makes the intention perfectly clear.

The proof in the present case shows that the navigation of the river was completely obstructed for more than a month in the summer of 1867, by a boom thrown across the channel just above the village of New London, so that the plaintiff was unable to pass up with his scow to procure bark for his tannery. And there was evidence from which the jury might have found that this obstruction in the river was created by the servants of the defendants, acting according to the orders of the boom-master of the company. Among other instructions, the court was requested to charge the jury, that

if they found, from the evidence in the case, that the Wolf river was a navigable stream between the tannery of the plaintiff and the Red Banks, where the plaintiff's bark was, and that the employees of the defendants, who.had charge of, and were running, logs for them, obstructed the navigation of the river, so as to prevent the plaintiff from passing up the river with his scow for the purpose of getting such bark and navigating said river, then the plaintiff was entitled to recover, even if such employees put in such obstructions by order of the boom company. It seems to us that this instruction was correct as a proposition of law, and it was entirely pertinent to the facts disclosed upon the trial. For it is very clear, that, if the boom company had no authority, under their charter, to obstruct the navigation of the river, they could not authorize other persons to obstruct it. As was well remarked by the counsel for the plaintiff, if the company itself could not do the act complained of, it evidently could not authorize others to do it. It would be merely directing them to do an unlawful act, which direction is no protection whatever to the persons acting unlawfully. Therefore, that the servants of the defendants obstructed the river in the manner they did, by the direction of the boommaster, manifestly is no sufficient warrant or justification.

It is said that if the act of the servants of the defendants was unlawful, they should not be held liable to the plaintiff for the damages occasioned thereby. But the proof is very clear that these servants were in the employment of the defendants, driving their logs down the river. And the rule is too well settled to require the citation of authorities in its support, that the principal is liable to third persons for the misfeasances of his agent in all cases within his employment.

It follows, from these views, that the circuit court erred in giving the instructions asked by the defendants,

and in refusing to give the first two instructions asked by the plaintiff.

*By the Court.*—The judgment of the circuit court is reversed, and a new trial ordered.