THE WISCONSIN RIVER IMPROVEMENT COMPANY VS. MANSON.

CONSTITUTIONAL LAW: *Tolls for use of improvements of navigable waters leading into the Mississippi or St. Lawrence.*

1. That provision of our state constitution (art. IX, sec. 1) which declares that " the river Mississippi, and the navigable waters leading into the Mississippi and St. Lawrence, and the carrying places between the same, shall be common highways, and forever free, as well to the inhabitants of the state as to the citizens of the United States, without any tax, impost or duty therefor," does not deprive the legislature of power to authorize the clearing out of the channel and construction of works in a navigable stream, at points where its waters are either unnavigable or only partially navigable, for the purpose of improving the navigation, and the charging of a reasonable toll as compensation for such improvements.

2. The act incorporating the plaintiff with power to improve the navigation of the Wisconsin river between certain *termini*, by erecting and maintaining dams and piers at points where they seem necessary, etc., and to collect tolls upon all lumber, etc., passing over or through any improvements so made, with a proviso that such tolls shall be no greater than are reasonable in consequence of such increased facilities of navigation, is valid.

3. The mere fact that plaintiff's improvements occupy the entire breadth of the channel, so that the river cannot be used as a highway without passing through or over them, is no defense in an action for tolls.

4. Until congress exercises its power over the subject, improvements authorized by the law of the state cannot be called in question by a private person on the ground that they conflict with the paramount authority of congress over the public navigable waters of the United States.

5. The answer not alleging that the improvements here in question were not within the terms of the legislative grant of power, or that the waters at the *locus in quo* were not rendered more navigable by them, the question of the validity of such a defense is not in the case.

APPEAL from the Circuit Court for *Brown* County.

Action to recover a certain sum, and to establish and enforce a lien therefor on lumber of the defendant, for tolls alleged to have accrued by reason of the running of the lumber over plaintiff's improvements in the Wisconsin river at Grand Rapids and the Lower Rapids.

The substance of the complaint, and of the answer so far as it merely sets up a defense, is stated in the opinion. The answer also contained a counterclaim, for damages accruing to defendant in consequence of injuries to his rafts of lumber, caused by the erection of plaintiff's dam in said river immediately below the Little Bull Falls. Plaintiff demurred to the answer as not stating facts sufficient to constitute a defense; and, from an order sustaining the demurrer, defendant appealed.

On the 21st of November, the cause was submitted on the brief of *James O. Raymond* for the appellant, and that of *G. W. Cate* for the respondent; but on the 6th of December following, the court made an order directing the cause to be argued at the bar, and it was subsequently so argued by *Mr. Raymond* and *Mr. Pinney* for the appellant, and *Mr. Cate* for the respondent.

For the appellant it was contended, 1. That the right to free navigation of the Wisconsin river is secured to all citizens of the United States by sec. 1, art. IX, and sec. 2, art.

II, of the state constitution, as well as by the ordinance of 1787 (Tay. Stats., 66), and the enabling act of 1846 (Tay. Stats., 82). *Mil. Gas Light Co. v. Gamecock*, 23 Wis., 144; *Wis. R. Imp. Co. v. Lyons*, 30 id., 61; *Att'y Gen. v. Eau Claire*, 37 id., 446; *Hogg v. Zanesville Canal Co.*, 5 Ohio, 410. 2. That plaintiff's charter (ch. 30, P. & L. Laws of 1853) does not expressly authorize it to take possession of the entire main channel of the river, and exact tolls for using such main channel, and it is doubtful whether the legislature intended to give it that right; that laws in derogation of public or private rights should be strictly construed *(Dean v. Charlton*, 27 Wis., 522, 525–6; *Janesville Bridge Co. v. Stoughton*, 1 Pin., 672); that if plaintiff can take possession of one mile of the main channel of the river and charge tolls for the navigation thereof, it may take possession of and charge tolls for every mile; that in such a case the river is no more a free and common highway, than is an ordinary railroad; that it is no answer to say that the corporation does not charge tolls for the navigation of the river, but only for the use of its improvements, since, where the improvements occupy the whole channel, the river, as a free and common highway, is thereby necessarily destroyed; that the legislature may probably improve these navigable streams, or authorize them to be improved, at the public expense; but that, if improvements are to be made for the use of which tolls are to be charged, they must be so constructed as to leave it optional with the public whether to use such improvements or not, while freely using the river; and that otherwise each of the states through which the Mississippi river runs, or which it bounds, may, under pretense of improving its navigation, levy tolls on all commerce carried on by means of that stream. 3. That the counterclaim set up in the answer arises upon an implied contract of the company, or out of the transaction set forth in the complaint (viz.: the use of the plaintiff's improvements by the defendant), or at least is connected with the subject of the action, and is valid.

as a counterclaim.    *Vilas v. Mason*, 25 Wis., 310;  *McArthur v. G. B. & M. Canal Co.*, 34 id., 139;  *Ainsworth v. Bowen*, 9 id., 348.

For the respondent it was argued, 1. That the state has full power to regulate and control the public use of a river wholly within this state, and may improve its navigation as it sees fit, and impose tolls for the use of such improvements.    Cooley's Con. Lim., 591;  *Veazie v. Moor*, 14 How. (U. S.), 568;  *Palmer v. Cuyahoga County*, 3 McLean, 226;  *Kellogg v. Union Co.*, 12 Conn., 7;  *Wadsworth v. Smith*, 11 Me., 278;  *People v. Fisher*, 24 Wend., 220;  *People v. Draper*, 15 N. Y., 532, 543;  *I. R. Packet Co. v. Peoria Bridge Association*, 38 Ill., 467;  *Chicago v. McGinn*, 51 id., 266;  *Wis. R. Imp. Co. v. Lyons*, 30 Wis., 65;  *Arimond v. G. B. & M. Canal Co.*, 31 id., 336.    2. That sec. 1, art. IX of the constitution of this state, while it inhibits the obstruction of the rivers there described to the injury of the commerce of the country, and the imposition of any tax, duty or impost, does not prevent the legislature from improving the navigability of these rivers, by removal of obstructions; that this construction has been placed upon that provision, not only by the statutes of this state (R. S., ch. 41, sec. 1), but also by the uniform practice of the northwestern states *(Craig v. Kline*, 65 Pa. St., 399); that the practical result of a contrary construction would be to prevent the improvement of those rivers, since the state is prohibited by its constitution from engaging in such work, and individuals would not undertake it as a donation to the public; that if such improvements could not be made in the main channels of the river, and tolls charged therefor, that would compel the surrender of the bed of the river to a difficult and dangerous navigation, and require the expenditure of immense sums in cutting out new channels, when the interests of commerce might be subserved by expending a comparatively trifling sum in improving the main channel; that, under plaintiff's charter, tolls can be collected only when it is alleged and pro-

ven that the works for whose use they are charged have improved the navigation of the river; and that it appears from the pleadings that the improvements for which the tolls in question were charged, were made upon rapids constituting material obstacles to the navigation of the river. 3. That plaintiff is the authorized agent of the state to improve the navigation of the river, and, while acting with due care within the scope of its authority, is not liable to defendant for the injury complained of in the answer. *Alexander v. Milwaukee*, 16 Wis., 258; *Palmer v. Cuyahoga Co.*, *supra*; *Depew v. Trustees, etc.*, 5 Ind., 8; Cooley's Con. Lim., 250–254, 592–4. 4. That the facts set up as a counterclaim do not constitute a counterclaim within the statute. R. S., ch. 125, secs. 10, 11.

COLE, J. The questions arising on this appeal are important, and not easy of solution. The plaintiff was incorporated in 1853 for the declared purpose of improving the navigation of the Wisconsin river from Stevens Point to Point Bass, in Portage county, in any manner the incorporators should deem most expedient. Sec. 1, ch. 30, P. & L. Laws of 1853. For the purpose of carrying out the objects of the act, the company was expressly authorized to erect and maintain such dams and piers at such points on the river between the *termini* as should seem necessary for the suitable improvement of the navigation of the river; and power was conferred to demand and receive tolls upon all lumber, logs, shingles, etc., which should pass over or through all or any of the improvements made by the company. Sec. 3. The company was not entitled to collect tolls until it had expended $5,000 in making substantial improvements which should afford increased facilities for navigating the river, and no greater tolls could be levied than were reasonable in consequence of such increased facilities of navigation. Sec. 11. It is alleged in the complaint, that the company, in the execution of its corporate duties during eight years last past, has expended $30,000 in improving the navi-

gation of the Wisconsin river at and above Point Bass, upon the Lower Rapids, the Grand Rapids and Big Bull Falls, by erecting dams for slack water and in removing rock from the channel of the river in said rapids, by means of which improvements, lumber, shingles and timber were and can be run to market much more safely and cheaply than could otherwise be done; and that all improvements were made upon rapids difficult of navigation, and which constituted material obstacles to the use of the river. The action is brought to recover tolls fixed under the charter, and to enforce a lien upon lumber and shingles which were run over Big Bull Falls, Grand Rapids, and the Lower Rapids, in the year 1874, through the improvements.

The defendant, in his answer, alleges that the Wisconsin river, from Jenny, in Lincoln county, to its mouth, is a public, navigable, meandered stream, the waters of which lead into the Mississippi river, and as such is a common highway, the navigation thereof being free to the citizens of the United States and the inhabitants of this state, without payment of tolls; that the river between said points was, at the organization of the plaintiff corporation, and for more than twenty years prior thereto had been, and has since continued to be, used as a public highway for the purpose of running and conveying lumber and shingles in rafts and boats down said river to market by the inhabitants of the state; that at the time mentioned in the complaint, the defendant was a citizen of the United States and an inhabitant of this state, and had been for a long time prior thereto engaged in the business of manufacturing lumber at Wausau, and running or floating the same in rafts from that place down the Wisconsin river to the Mississippi river to market; that the plaintiff's pretended improvements are in the main channel of the river, and have been so made that, in navigating the river with rafts of lumber, the defendant, as well as all other persons running lumber down the river, are and were compelled to run the same

over and through the pretended improvements of the company in order to get to market. The defendant admits that he was the owner of the lumber mentioned in the complaint, and ran the same over the places in said river, as he had a legal right to do, in the prosecution of his business as lumberman, and in navigating the river, without any obligation to pay any tax or toll therefor. This is a sufficient statement of the pleadings to present the main question arising on the demurrer to the answer.

The Wisconsin river, at the points mentioned in the pleadings, constitutes a part of the navigable waters of the United States, and is one of the streams included in the last clause of the fourth article of the ordinance of 1787, which clause forms a part of section 1, article IX of the state constitution. It will therefore be seen that the case necessarily involves an interpretation of this provision of the constitution, and an inquiry as to the power of the legislature under it over the navigable waters within the limits of the state. So far as we are aware, the question has not before been directly presented for adjudication in this state, while, in the other states formed out of the northwestern territory, it could not well arise, because they have no similar provisions in their state constitutions. The language of the constitution is as follows: " And the river Mississippi, and the navigable waters leading into the Mississippi and St. Lawrence, and the carrying places between the same, shall be common highways and forever free, as well to the inhabitants of the state as to the citizens of the United States, without any tax, impost, or duty therefor." Is the act of incorporation to which reference has been made, repugnant to this constitutional provision? Though the language of the constitution is general, it must receive a reasonable construction. It would be most unreasonable to say that it prohibited the state from granting power to a corporation or individual to make a canal, or railroad, through or across the " carrying places," or to construct works in a stream, at

a point where its waters were unnavigable, for improving the navigation, and to charge a reasonable toll as a compensation for the benefits of such improvements. Has not the state power to promote, by artificial means, the navigability of streams, and render them more useful to the public? Often there are in streams, otherwise navigable, natural obstructions, such as rocks or rapids, which destroy or materially obstruct continuous navigation. Cannot the state authorize the removal of such obstructions from the channel, or provide for overcoming them by means of slack-water dams, and allow compensation for the expense incurred, by way of tolls? The state itself cannot remove such obstructions, because it cannot be a party to carrying on any work of internal improvement, and, if such obstructions are removed, it must be done by other agencies. It is certain that no corporation or individual would be to the expense of making such improvements in these streams without some reward. The plaintiff alleges that it has expended over $30,000 in erecting dams for slack water, and in removing rocks from the channel of the Wisconsin river at the rapids; and how is it to be remunerated for its outlay, except by tolls upon lumber and timber which pass through the improvement? The object of the constitution, so far as it guaranties that the Mississippi, and navigable waters leading into that river and the St. Lawrence, and the carrying places between the same, should be common highways and forever free, was to prevent the imposition of any tax, impost or duty for the use of the streams and carrying places in their natural state. The constitution relates to navigable waters only. It does not deprive the legislature of the power, through the instrumentality of corporations or individuals, to connect unnavigable waters by canals or other means, or to render navigable places in them not navigable by nature, and to charge tolls in such cases for the use of the waters made navigable by such improvements. It is evident that waters may be partially navigable only, either as to time

or mode of navigation, and the constitution does not deprive the legislature of the power of making such improvements as increase the navigability of partially navigable waters, either in point of time or mode of navigation, and to charge tolls for the use of waters whose navigability is so increased by such improvements. This, we think, is the true construction of the constitution. It does not, nor was it intended so to restrict the power of the state over the navigable waters within its limits, that it cannot authorize a company or individual to construct a canal through the carrying places between the same, or erect dams or other necessary structures in the stream which will substantially improve its navigation, and charge tolls for the use of the same. For certain it is the provision was designed for good and not for evil. "So far as it was intended to restrict the action or power of the states or individuals, it was to disable them from the infliction of public injury. The people of the United States were not to be deprived of the use of the water courses in the Northwest Territory, by any unjust or wanton exercise of power over them; but it was not contemplated that the hands of the states should be so tied up as that it should not be in their power to remove a natural impediment to navigation, or avoid such an impediment by canals and other improvements. A contrary construction would be a perversion of the great and primary design of the clause. It would embarrass, if not entirely arrest, some of the great works of internal improvement in progress or projected in the west." These remarks of Judge LEAVITT, in *Spooner v. McConnell*, 1 McLean, 337–378, in exposition of the clause of the ordinance of 1787, are equally applicable to the provision of the constitution under consideration. The decisions in *Wisconsin River Imp. Co. v. Lyons*, 30 Wis., 61; *Arimond v. The Green Bay & Miss. Canal Co.*, 31 id., 316; *Attorney General v. City of Eau Claire*, 37 id., 402; *State of Wisconsin v. City of Eau Claire*, 40 id., 533, and *Tewksbury v. Schulenberg*, 41 id., 584, so far as they have a bearing upon

the question, are in harmony with this construction. In the latter case, the counsel for the defendant admitted that the legislature might authorize the construction and maintenance of dams upon navigable streams for the improvement of the navigability of such streams, and give the person erecting the dam power to collect reasonable tolls for the increased facilities thereby furnished for travel and transportation. In view of the concession of counsel, however, the case is not valuable as an authority upon the question. In other states, bridges authorized to be erected over navigable streams for the convenience of travel and commerce, across and not upon such streams, have been sustained as lawful structures. See *Ill. R. Packet Co. v. Peoria Bridge Ass'n*, 38 Ill., 467; *The City of Chicago v. McGinn*, 51 id., 266; *Palmer v. Commissioners of Cuyahoga Co.*, 3 McLean, 226; *Williams v. Beardsley*, 2 Carter, 591.

Now, if we refer to the act of incorporation, we will find that it is of the character which the legislature, as we have said, is not prohibited from enacting. Its declared object and purpose are not to obstruct but improve the navigability of the Wisconsin river; not to impair the common right of passage thereon, but to render that right more valuable and safe. Dams and piers were authorized to be erected and maintained only where necessary for the suitable improvement of navigation, and where they would afford increased facilities for the use of the river. These dams and piers were lawful structures, and could not properly be called pourprestures or encroachments upon a public right. They are not like the mill dam in *Cox v. The State*, 3 Blackf., 193, which was erected in violation of the state statute; nor like the dam in *Hogg v. Zanesville Canal & Manufacturing Co.*, 5 Ohio, 410, which was not constructed for the purpose of improving navigation. It is true, the act authorizes the imposition of tolls upon shingles, vessels, etc., which should pass over or through the improvements; but these tolls were to be reasonable, and,

when they were, must be deemed a fair compensation for the increased facilities for trade and intercourse afforded by such improvements. It is not an exaction of a toll or duty for the navigation of the river in its natural state, or unimproved condition.

It was objected, by the learned counsel for the defendant, that the plaintiff had usurped or appropriated, for its improvements, the entire channel of the river, so as to render it impossible to navigate or use the stream at all, as a highway, without passing through or over these improvements. It is said that any improvement authorized should require the river to be left in substantially its former state, so as to give the public the option to use the improvement and pay the toll, or the free natural channel. We do not feel the force of this position. We have stated that the constitution only relates to navigable waters, and does not deprive the legislature of the power, through the agency of a corporation or individual, to improve unnavigable, or partially navigable waters, in streams otherwise navigable. The legislature is, primarily at least, the judge of the necessity of the improvement, and when it delegates the power to a corporation, and the state does not question that the improvement made by the corporation is in conformity with the delegated power, it seems to us that neither the necessity nor usefulness of the improvement, nor the manner in which it is made, can be called in question by private parties. Large discretion was given the plaintiff as to the mode of executing the work, and presumably it has exercised the power conferred wisely. The case involves no question of foreign or inter-state commerce, or of the paramount authority of congress over the public navigable waters of the United States. The Wisconsin river may have such a connection with the Mississippi as to form with it a continuous highway, over which commerce is, or may be, carried on with other states; but until congress exercises its power over the subject, the improvement legalized by the state cannot be called

in question by private parties. *Pond et al. v. Turck*, Sup. Ct. U. S., 5 Reporter, Feb. 13, 1878, p. 193. If the answer in this case had set up that the improvement in question was not within the grant of power, or that the waters at the *locus in quo* were not made more navigable by the improvement, a question would have been presented not now before us. The answer, however, impliedly admits that the improvements were made between the termini mentioned in the charter, but alleges that they were so made that, in navigating the river with rafts of lumber, the defendant was compelled to run such lumber over and through them. It is a fair inference from the averment that the defendant availed himself of the improvements.

The demurrer was to the answer, which, we hold, states no valid defense. The answer likewise sets up a counterclaim. But the demurrer is not to the counterclaim; so the question as to its sufficiency is not before us. But were it otherwise, it is not obvious how the counterclaim could avail in this action to recover tolls for using the improvements at the places mentioned in the complaint. The matters stated in the counterclaim arise out of a different transaction, and constitute a tort. We therefore think they would not be a proper counterclaim; but as the question is not here, it is not decided.

*By the Court.* — The order of the circuit court sustaining the demurrer to the answer is affirmed.