JANUARY TERM, 1879.    237

.The Stevens Point Boom Company vs. Reilly and another.

THE STEVENS POINT BOOM COMPANY VS. REILLY and another.

NAVIGABLE RIVERS: *Rights of riparian owners as to the construction of booms.*

1. Riparian owners on navigable rivers may lawfully, until prohibited by statute, construct, in front of their lands, proper booms to aid in floating logs, so as not to violate any public law or obstruct the navigation of the river by any method in which it may be used, or infringe upon the rights of other riparian owners. 44 Wis., 295.

2. Booms of the character described, erected by riparian owners in aid of navigation, through shoal water far enough to reach actually navigable water, are not within the statute (R. S. 1858, ch. 41, sec. 2; R. S. 1878, sec. 1596), which forbids the obstruction of navigable rivers without permission of the legislature.

3. In no case can such riparian owners (though owning on both sides of the stream), without consent of the legislature, maintain booms completely crossing the stream; since this would necessarily more or less obstruct navigation, and be in violation of public law.

4. The right to construct booms and other structures in aid of navigation, necessarily implies some intrusion into navigable water; and the extent of such intrusion depends upon the conditions under which the right is exercised, the extent and uses of the navigable water, and the nature and object of the structure itself; but the intrusion must always be in aid, and not to the obstruction, of navigation.

APPEAL from the Circuit Court for *Columbia* County.

After the decision of the court in a former appeal herein (44 Wis., 295), the case having been remitted to the circuit court, defendants moved that court to modify the injunctional order previously made, in accordance with the opinion of this court. The modification asked by the defendants was, that the order should be made to read as follows: " It is ordered that said defendants and each of them, their attorneys, agents and assistants, and each and every of them, under the penalties by law prescribed, do absolutely desist and refrain from building, constructing or keeping up and maintaining a boom and piers, or either boom or piers, in and upon the Wisconsin river between sec. 32 in township 24, range 8 east, and the

north line of township 24 north, in range 7 east, in Portage county, Wisconsin, except where the defendants may have riparian rights in said river, and in such case not to exceed or extend beyond or outside of such riparian rights or limits, and in no case to obstruct the free navigation of said river by any method in which it may be used."

The court refused to make the modification proposed, but made the following order: "It is ordered that the injunctional order herein be modified as follows: 1. That the defendants be permitted to keep up and maintain in the Wisconsin river, opposite said lots 2 and 3, such piers and booms as have been maintained by the occupants of said lots since the erection of the mill thereon in 1873. 2. That the defendants may construct in front of the said land, or in front of any land occupied by them on the shores of said river, proper piers and booms, through the water far enough to reach actually navigable water, to aid in floating logs to market or otherwise. And except as herein modified, the said injunctional order is continued in full force."

The defendants excepted to this order as not in conformity to the opinion of this court, and appealed therefrom.

The appeal was submitted for the appellants on the brief of *E. S. Bragg*, of counsel; and for the respondent on that of *G. W. Cate*, its attorney, with *Jones & Sanborn*, of counsel.

For the appellants it was argued, 1. That the first branch of the modified order limits the defendants to such an exercise of their riparian rights as the occupants of their lands have hitherto exercised, while no such limitation or rule of use is hinted at in the opinion of the court directing the modification. 2. That the second branch of the modified order limits defendants to the use of "proper piers and booms through the water far enough to reach *actually navigable water to aid in floating logs to market, or otherwise;*" while the opinion of this court on the former appeal declares that defendants, until prohibited by statute, may "construct in front of their land

proper booms to aid in floating logs, so as not to violate any public law, or obstruct the navigation of the river by any method in which it may be used, or infringe upon the rights of other riparian owners." 44 Wis., 305. The rule of this injunctional order is, that whenever there is water enough in a log-driving stream "to aid in floating logs to market or otherwise," the riparian owner has no rights. Such a limitation would make the right to construct piers and booms useless. Our amended answer, by way of supplement, sets up the fact that we have acquired riparian rights on the shore opposite to that upon which our present piers, etc., are constructed; and it is well known that immediately adjoining such opposite shore there is water of sufficient depth to float logs, not necessary to be used in the navigation of the river, and forming no part of the navigable portion of the river proper. Still there is water there "sufficient to aid in floating logs to market." And the object of the peculiar phraseology of the second branch of the order, so different from the first, was to prevent our use of our riparian rights, except so far as we had previously used them. The order gives us our rights upon one side of the stream, where we have made our erections, but prevents our enjoyment of the same rights on the opposite side.

For the respondent it was argued, that the ownership of the opposite shores of a navigable river does not give defendants a right to construct a line of piers and boom across the river without legislative permission (Tay. Stats., 749, § 2; R. S. 1878, sec. 1596), because, in the absence of such permission, the court will presume that such structure would be an obstruction to navigation, such as the statute was designed to prevent. *Wis. R. Imp. Co. v. Lyons*, 30 Wis., 61; *Diedrich v. N. W. U. Railway Co.*, 42 id., 268; *Atlee v. Packet Co.*, 21 Wall., 389. Defendants argued in the court below, that, as owners or occupants of both shores, they may extend booms from each shore to the thread of the stream, and thereby

make a continuous line across the river in aid of the use of their mills on the shore, at their peril of obstructing navigation. But such is certainly not the meaning of the former decision of this court. That holds that as riparian owners they may build out from their lands booms and piers *reaching* navigable waters, to enable them to take advantage therefrom by receiving into their booms logs floating in such navigable waters; that they may do this only *in furtherance of the public use* of the waters, and at their peril even then of interfering with the public use of the river; and that, in the absence of any competent grant from the legislature, they have no right to extend their works *into or across* the navigable waters of the river. It is not pretended that defendants' proposed boom will aid, or is designed to aid, the navigation of the river; but the answer admits that the *object is* to stop and hold logs for the use of defendants' mill, an object purely private, "in aid of the private use of the shore, and not in aid of the public use of the water." Plaintiff has never attempted to prevent the use and occupation by defendants of all the *storage and side booms* used in connection with their mill since it was built; and the first paragraph of the order concedes to them the right to such use and occupation. The second paragraph secures to them all their rights as riparian owners. But it does not concede that the riparian owner of both shores may, in virtue of such ownership and for his own convenience, push lines of huge rock piers, with booms attached, across navigable streams, provided he leave a gap of sixty or more feet in such booms for passing floatages. That is a doctrine which would destroy the usefulness of the river for floating logs and lumber to market. Loose logs are driven many hundred miles in the river, in drives containing from a few hundred thousand to several million feet; all of which are detained at every boom across the river, and every log examined and passed through separately, occasioning delay to such an extent as sometimes causes those farthest down the

river to lose the benefit of a freshet. It has therefore been the policy of the lumbering interest to permit the establishment of booms across the main river, only at such points as will admit of a single structure accommodating a large lumbering interest, or where the circumstances of location are such as to occasion the least possible injury to navigation; and then only when the necessity is apparent. Such booms have been established only at those points on the river where *public* interest demanded them. From these " main booms " the several mills in the vicinity are supplied with logs from time to time, as needed; and the logs are held by such mills in *side or storage booms*, arranged in lines bearing such relation to the shores and to navigable water as to present no obstruction to, and cause no delay in, running logs and lumber past them and down the river, while facilitating the running of logs from the navigable waters of the river into such private holding booms. Main booms have been established only at principal points on the river: one each at Wausau, Mosinee, Stevens Point and Grand Rapids, in a distance of about one hundred miles of river. Under such an arrangement, private interests are not injured, and the least possible injury is inflicted on the navigation of the river. The location of such structures is in the discretion of the legislature; and presumably none such will be licensed without a public necessity. But if the doctrine be established that the riparian owner, as such, can construct piers and booms across the main river, at his own pleasure, the running of logs will probably be so embarrassed as to compel their manufacture on the upper part of the river exclusively. The questions involved, therefore, are of vast importance to the great lumbering interests of this country.

RYAN, C. J. This appeal was submitted on printed briefs; and these sufficiently show that the parties regard the appeal as involving some substantial right. An argument at the bar

would probably have instructed the court in the nature of such right, and how it is affected by the order from which the appeal is taken. As it is, the court is left very much to conjecture; and, as the previous decisions of the court are here understood, the controversy appears to be rather in the nature of a skirmish of words than a war of things.

It may be said, in passing, that of late the bar seems to put less value than the bench, on oral arguments of appeals, though the latter rarely fail in throwing light on the dead letter of briefs, however ably prepared.

As the question is regarded here, there is little substantial difference between the order submitted by the appellants, and the second clause of the order made by the court below. The first clause of the order, however, does not follow the mandate of this court on the former appeal; and the record affords no means of judging why it was introduced or what effect it is intended to have. The order must therefore be reversed.

It is difficult to understand how serious disagreement should have arisen in the construction of the opinion of this court on the former appeal, *Stevens P. B. Co. v. Reilly*, 44 Wis., 295. Following *Diedrich v. The N. W. U. Railway Co.*, 42 Wis., 248, which in its turn followed *Dutton v. Strong*, 1 Black, 23, and *Atlee v. Packet Co.*, 21 Wall., 389, it was held that the appellants might "lawfully, until prohibited by statute, construct, in front of their land, proper booms to aid in floating logs, so as not to violate any public law or obstruct the navigation of the river by any method in which it may be used, or infringe upon the rights of other riparian owners. . . . In any case it must not obstruct the free navigation of the river by floating logs to market or otherwise. Subject to these conditions, the appellants appear to have a right, as riparian owners, to construct a proper boom from their own premises on the bank of the river."

It seems to be apprehended by the respondents, that the form of order submitted by the appellants to the court below would,

under the rule so given, have authorized the appellants, in the exercise of their riparian right on both banks of the river, to maintain booms completely crossing the river. This question was not in the former appeal. But the right suggested is expressly excluded by the opinion. No form of order could have that effect. Such boom or connecting booms would more or less obstruct the navigation of the river, and would violate public law. R. S. 1858, ch. 41, sec. 2; R. S. 1878, sec. 1596; *Barnes v. Racine*, 4 Wis., 454; *Enos v. Hamilton*, 24 Wis., 658. This is not a question of materially impeding navigation, under color of legislative grant, as under ch. 399 of 1876. The general statute forbids any obstruction of the river without permission of the legislature. Booms erected by riparian owners, in aid of navigation, through shoal water far enough to reach actually navigable water, are not within the statute. Such do not obstruct the river, but aid its use.

This private right of the riparian owner, as declared in *Diedrich v. Railway Co.*, quoted in the opinion on the former appeal, is subordinate to the public use of a navigable river, and is always exercised at peril of obstructing navigation. This subjection of the private right to the public use may sometimes impair the private right or defeat it altogether. But the public right must always prevail over the private exercise of the private right. The legislature may indeed, upon public considerations, authorize such an exercise of the private right across the river as will not materially obstruct navigation. But, without legislative permission, the exercise of the private right entirely across the stream is forbidden by the statute.

It was suggested in the former opinion in this case, that the riparian right of constructing a boom was presumably limited by the thread of the stream. That is probably correct. It was a mere intimation, however; and it was unfortunately made, if it led the appellants to believe — as the order proposed by them may suggest — that the right always extends to

the thread of the stream.    It has already been shown that it cannot so extend to the obstruction of navigation.

The appellants seem to apprehend that the language of this court in *Diedrich v. Railway Co.*, and on the former appeal in this case, as well as in the second clause of the order from which this appeal is taken, renders the riparian right nominal and useless.    It is claimed by the learned counsel that the measure of riparian right is restricted to water not navigable, and is unavailing because it cannot reach the point where it would become useful.    It is not believed that the language of the federal supreme court in *Dutton v. Strong* or *Atlee v. Packet Co.*, or of this court in *Diedrich v. Railway Co.*, or on the former appeal in this case, is properly subject to such hyper-criticism.    The right sustained in all these cases is a practical right, " in aid of navigation, through the water far enough to reach actually navigable water " *(Diedrich v. Railway Co);* " to aid in floating logs " *(Stevens P. B. Co. v. Reilly).*    These terms do not imply, the whole tenor of the opinions repels, the construction, that wharves, piers, booms and the like, in aid of navigation, must be constructed within such limits as to make them inoperative.    A pier upon Lake Michigan, to aid navigation, must go into water deep enough to be accessible to vessels navigating the lake.    A boom on a logging stream, to aid such navigation, must go into water deep enough to be accessible to floating logs; must be so constructed as to receive and discharge floating logs.    In either case, to reach navigable water reasonably implies reaching it with effect to accomplish the purpose; the word often signifying some penetration of the thing reached.    One is not understood to stop outside the limits of a place when he is said to reach it.    He is understood to enter it, as far as may be necessary for his purpose. The right in question necessarily implies some intrusion into navigable water, at peril of obstructing navigation.    *Atlee v. Packet Co.*

This intrusion is expressly permitted to aid navigation, and

expressly prohibited to obstruct navigation. It is impossible to give a general rule limiting its extent. That will always depend upon the conditions under which the right is exercised; the extent and uses of the navigable water; the nature and object of the structure itself. A structure in aid of navigation which would be a reasonable intrusion into the waters of Lake Michigan, would probably be an obstruction of navigation in any navigable river within the state. A logging boom which would be a reasonable intrusion into the waters of the Mississippi, would probably be an obstruction of navigation in most or all of the logging streams within the state. The width of a river may justify a liberal exercise of the right of intrusion, or may exclude it altogether. Its extent is purely a relative question. And there are no facts in this record to warrant any opinion of the extent to which the appellants may exercise the right in this case, without impairing the public use.

If within these conditions the appellants can construct a useful boom, they may. If not, their defect of right is in the condition of the river and its relation to their property, and not in the law. And it is not believed, as suggested in the brief of counsel, that the learned judge of the court below would have held the exercise of the right as here defined, a violation of the injunctional order by the appellants.

Other questions are discussed in the briefs, which were either passed upon in the former appeal or are not properly in this, and which the court will therefore not notice.

The distinguished counsel of the appellants reproaches the court for having, on the former appeal, relied on ch. 399 of 1876 in aid of the respondents' case, because the respondents themselves had not relied on it. Such is understood to be the precise duty of this court. The parties furnish the facts in the record, but the court must apply to the facts any principle of law or provision of statute known to it, whether relied on by the parties or not.

There would be, in such a case, great impropriety in dictat-

ing to the court below the precise terms of the order to be made. It is thought quite unnecessary. It is not believed that the distinguished jurist who is judge of the court below, will misapprehend this opinion, or misapprehended the opinion on the former appeal. If it were not for the different and narrow constructions which the parties appear to have put upon the different forms of order proposed, the second clause of the order made might be affirmed. But because the first clause of the order must be reversed, and because the terms of the second clause of the order ought, in the circumstances, to be more precise, it is thought proper to reverse the whole order.

*By the Court.* — The order of the court below is reversed, and the cause remanded with directions to the court below to modify the injunctional order in conformity with the opinions of this court on the former appeal and on this.