Cohn vs. The Wausau Boom Company.

Booms in Navigable Rivers. *(1) Rights of riparian owner. (2) Power of legislature. (3)* Quasi *public franchises. (4) Form of action against corporation authorized to maintain boom.*

1. A riparian owner on navigable water, in this state (whether or not the owner of the soil under the water), may construct in front of his land, in shoal water, proper wharves, piers and booms, in aid of navigation, at his peril of obstructing it, far enough to reach actually navigable water; but this right is subordinate to the public use of the water, and may be regulated or prohibited by law.

2. Ch. 45, P. & L. Laws of 1871, amended by ch. 256 of 1873, grants to defendant the exclusive right of constructing booms for holding, storing and assorting logs, etc., for a certain distance up and down the Wiscon-

sin river; but, while it authorizes defendant's works in aid of the boom to extend, in the water, up and down the river, fronting its own lands and those of other riparian owners, excluding all. other booms, within the limits specified, it does not attempt to authorize the use by defendant of *any part of the bank* of the river owned by others; and this could not be done for a private use, nor for a public use without just compensation.

3. The chief navigable value of the Wisconsin river being for the floating of logs to market, booms like that authorized by the statute being necessary for that use, and the statute giving an equal right in the use of defendant's works to all the world, defendant is held to be a *quasi* public corporation, and its franchises to be granted for a public use; and the prohibition of other riparian owners on the same river, within the specified limits, from constructing booms therein (a prohibition implied from the exclusive grant to defendant) is a valid exercise of the paramount public right.

4. If defendant's works have been so constructed as to impede the general navigation of the river, in violation of its franchise, a suit in equity by a private person (for an injunction, etc.) is not the proper remedy; and if defendant has so used its works in handling rafts or logs as to give a private right of action, the action must be at law, for damages.

APPEAL from the Circuit Court for *Outagamie* County.

The plaintiff, as owner of lot·6 in sec. 24, town 29 north, range 7 east, in Marathon county in this state, commenced this action in April, 1876, for the purpose of procuring to be removed, and abated as a nuisance, certain works constructed and maintained by defendant in the Wisconsin river, in front of said lot, under a claim of right founded upon ch. 45, P. & L. Laws of 1871, amended by ch. 256 of 1873. The complaint further demanded judgment that the defendant, its agents, etc., be perpetually enjoined from completing and maintaining said works in front of plaintiff's lot; that plaintiff recover of defendant a specified sum for damages caused by the construction and maintenance of the same; and for general relief.

The circuit court found the following facts: That plaintiff had been for several years prior to the commencem ɟo ʇuǝɥᴉe action, and still was, a lumberman, doing business upon the Wisconsin river and its tributaries, and as such owned and was interested in a large amount of pine timber lands upon

that river and its tributaries; that he had been for several years, and still, was, the owner in fee and in actual occupation of lot 6 described in the complaint, which lot has upon the east and south sides a frontage upon said river of 1918 feet; that the river opposite said lot, and for many miles above and below it, is a public highway, capable in its natural state of floating to market the products of the forest, and for many years has been and now is much used by the citizens of the state and others for the purpose of floating large quantities of logs, timber and lumber to the markets and mills adjacent to said stream; that directly in front of plaintiff's land the width of the river is about 500 feet, the average width of the main channel (in its natural state) about 90 feet, and the average distance from such main channel to the bank of plaintiff's land about 200 feet; that the general current of the river above and below said land is swift, but that in the natural state of said stream its waters in front of said land, between low-water mark and the thread of the stream, are sluggish and slack; that one of the necessary appurtenances to a saw-mill or lumber manufactory along the bank of said river or near said land, is a boom or pocket in which lumber may be rafted, and into which logs and lumber may be floated and there stored; that the waters of said river, in their natural state, in front of said land, are capable of being formed into such a pocket or boom; that said land contains sufficient area and frontage upon the river for the erection of two large saw-mills and their appurtenances, and, in the natural state of the river, the plaintiff, without obstructing its free use and navigation as a public highway, can construct and maintain, between low-water mark and the thread of the stream, a boom capable of storing at least 3,000,000 feet of logs; that said land was purchased by plaintiff as a saw-mill site, and with a view to constructing and maintaining, in front thereof, such a boom or pocket; that the land is valuable for the purposes just mentioned, but otherwise of little value; that at the time mentioned in the com-

plaint, defendant constructed in front of plaintiff's land, along the whole length thereof, between low-water mark and the thread of the stream, a line of piers, booms and piles, at an average distance of about 85 feet from the bank, and about 115 or 120 feet from the main channel of the river in its natural state, and has ever since maintained and used the same for the storage of logs; that the piers were formed by driving into the bed or soil of the river numerous piles, united at the top by bands of iron, and kept in place by filling the piers with stones, the several piers being connected by booms; that defendant has run several lines of similar piers and booms across said river nearly at right angles to the line of piers and booms above described; that said system of piers and booms forms in front of said land a vast enclosure, and is constantly maintained and used by defendant for the storage of logs and timber; that ever since the construction of said works defendant has appropriated and blocked up the entire bed of the river in front of plaintiff's land and above and below the same, with piles, piers and booms, and has rendered it impassable and unnavigable, except a channel immediately in front of, and adjacent to, plaintiff's land, of an average width of about 85 or 90 feet, which is the only navigable portion of said river for a long distance above and below plaintiff's land; that by reason of the construction and maintenance of said works, the channel of the river has been shifted from its natural place, the current in front of said land greatly increased, and the water there, between low-water mark and said piers and booms, made to flow with great velocity, so as to form the main channel of the river; that, by reason of these facts, the approach to plaintiff's land has been rendered inaccessible for logs and lumber, all connection with the center of the stream cut off, and the fitness of the land for booming and mill purposes destroyed; that defendant has no legal or equitable title to the land between the meandered line and the middle of the river; that defendant might erect and maintain a system

of piers and booms further up the river and nearer its east side, which would allow it to effect the purposes of its charter and not abridge plaintiff's riparian rights or the right of the public to navigate the stream; and that, by reason of the construction and maintenance of said piers and booms, plaintiff has suffered special damage.

Upon these facts, the judge held that the plaintiff was entitled to the specific relief demanded in the complaint, except that the damages allowed were merely nominal. Judgment was rendered in accordance with this decision. Defendant filed exceptions to the findings of fact and conclusions of law, and appealed from the judgment.

For the appellant, there was a brief by *Silverthorn & Hurley*, and oral argument by *Mr. Hurley*. They cited secs. 10, 11, 26 of defendant's charter (ch. 45, P. & L. Laws of 1871); and as to the validity of such legislation they cited *Pound v. Turck*, 5 Otto, 464. They further contended that while it is the settled doctrine of this state that the proprietor of lands on a river navigable or unnavigable, "in the absence of express limitation in his title," takes to the thread of the stream, it is equally well settled that he takes subject to the public right of navigation, and that, whether he owns the soil under the water or not, " the public has the right to improve, regulate and control the bed of the stream and the flow of the waters therein, in the interest of navigation and commerce." *Wis. R. I. Co. v. Lyons*, 30 Wis., 62; *Arimond v. G. B. & M. Canal Co.*, 31 id., 316; *Delaplaine v. Railway Co.*, 42 id., 225. See also *Boorman v. Sunnuchs*, 42 Wis., 233; *Diedrich v. Railway Co.*, id., 248; *Stevens Point Boom Co. v. Reilly*, 44 id., 295; *Same v. Same*, 46 id., 237; *Jones v. Pettibone*, 2 id., 308. The state having the right to make the improvements in question, or to confer authority to do so on the defendant as its agent for the purpose, and defendant having executed the authority so conferred, " in a careful and discreet manner," equity will not decree the structures a nuis-

ance and order them abated, especially at the suit of a private party. *Alexander v. Milwaukee*, 16 Wis., 247; *Lansing v. Smith*, 8 Cow., 146, and authorities there cited. The state, indeed, could not itself take plaintiff's property or directly damage it, nor authorize defendant to do so, without compensation; nor has it done so in this case. The riparian owner upon navigable water, whether or not he owns the soil to the center of the stream, has a right to construct wharves, piers, etc., in shoal water in front of his land, *only in case he is not* "*prohibited by local law*" (*Diedrich v. Railway Co., supra);* but since the act of 1873 plaintiff has been prohibited by local law from constructing piers and booms in front of his land. The case is one in which " the subjection of the private right to the public use may impair the private right or defeat it altogether." *Stevens Point Boom Co. v. Reilly*, 46 Wis., 243. " Everyone who buys property on a navigable stream, purchases subject to the superior right of the commonwealth to regulate and improve it for the benefit of all the citizens." *McKeen v. Del. Div. Canal Co.*, 49 Pa. St., 424. As to the claim that defendant's works were a nuisance from which plaintiff had suffered special damage, counsel contended, among other things, 1. That, if they were constructed in a careful and discreet manner pursuant to the legislative grant of authority, they would be lawful even if a real impediment to navigation. *State of Pa. v. Wheeling Bridge Co.*, 18 How., U. S., 432; *Pound v. Turck, supra,* and authorities there cited; *Crittenden v. Wilson*, 5 Cow., 165; *Canal Com'rs v. The People*, 5 Wend., 423; *The People v. Railroad Co.*, 15 id., 113. 2. That as the court had found plaintiff entitled to only nominal damages, he could not have suffered any special injuries entitling him to maintain a suit for the abatement of the works, even if they were a common nuisance. *Lansing v. Smith*, 8 Cow., 146; *Carpenter v. Mann*, 17 Wis., 155; *Greene v. Nunnemacher*, 36 id., 51. 3. That a suit cannot be maintained in equity, in this state, by a private person, to

abate an existing nuisance, because there is a complete and adequate remedy at law (sec. 1, ch. 144, R. S. 1858); and the objection, being founded on the exclusive jurisdiction of courts of law, need not be taken by answer. *Remington v. Foster*, 42 Wis., 608, and authorities there cited.

For the respondent, there was a brief by *Finch & Barber*, and oral argument by *Mr. Barber:*

1. As to the form of action. As riparian owner, plaintiff took to the center of the stream. *Olson v. Merrill*, 42 Wis., 210; *Delaplaine v. Railway Co.*, id., 215; *Boorman v. Sunnuchs*, id., 242; *Yates v. Judd*, 18 id., 118; *Arnold v. Elmore*, 16 id., 509, and cases there cited. Without authority of law, defendant appropriated to its own use land of the plaintiff constituting the bed of the river, and was constructing thereon permanent works which would produce continuous damage to the plaintiff, and tend to change the character of the property. Equity will assume jurisdiction, both because the remedy at law is inadequate, and in order to avoid multiplicity of actions. The complaint seeks not merely to procure a removal of the obstructions already in the river, but to prevent defendant from placing others there in the future; and no action at law can accomplish this. In cases of trespass upon land, where the act complained of has not been completed, equity has always interposed, especially when the damage is serious, tends to change the character of the property, and is continuous in its nature. Kerr on Inj., *296, *331, and notes; *Martyr v. Lawrence*, 2 D., J. & S., 261; *Trustees, etc., v. Hoessli*, 13 Wis., 348; *Walker v. Shepardson*, 2 id., 384; *Potter v. Menasha*, 30 id., 492; *Corning v. Troy I. & N. Factory*, 40 N. Y., 206; *Middleton v. Flat Riv. Booming Co.*, 27 Mich., 534; 2 Story's Eq. Jur., §§ 901, 924, 927, and notes. This is especially the case when corporations enter upon the land of another without corporate authority; as the courts will keep them under control on grounds of public policy. Kerr on Inj., *296, note f. The rights of the riparian owner

are rights of *property* (*Walker v. Shepardson*, 4 Wis., 508; *Chapman v. Railroad Co.*, 33 id., 629; *Olson v. Merrill*, 42 id., 210); and the diversion of the flow of the river, causing special damage to plaintiff's land, is a nuisance which entitles him to a mandatory injunction to place him *in statu quo*. Angell on W. C., §§ 444–456; High on Inj., § 512; 2 Wood on Nuis., § 1130; *Earl v. De Hart*, 1 Beasley, 280; *Corning v. Troy I. & N. Factory*, 40 N. Y., 191; *Webb v. Portland Manuf'g Co.*, 3 Sum., 190; *Tyler v. Wilkinson*, 4 Mason, 400; *Townsend v. McDonald*, 2 Kern., 381; *Cotton v. Boom Co.*, 19 Minn., 497; *Rogers Loc. & Mach. Works v. Railway Co.*, 5 C. E. Green, 387; *Bemis v. Upham*, 13 Pick., 169. The judgment is as provided by statute (Tay. Stats., 1698, §§ 2, 6), all the facts being found by the court which were necessary to entitle plaintiff to the statutory relief. And even though it should be held that our action is wholly equitable, defendant, after answering, going to a trial, consenting to a reference, etc., cannot now be heard to object. *Peck v. School District*, 21 Wis., 517; *Tenney v. State Bank*, 20 id., 164. 2. As to defendant's rights under its charter. It does not follow that because defendant has the right to construct a boom, it has also the right to do everything necessary for that purpose. Its charter in its present form contains no eminent domain clause; no provision for ascertaining the damages sustained by property holders. It is a mere license from the state to use the river, subject to the rights of the property holders. If the company can obtain by purchase the title to the bed of the stream, the consent of the riparian owner to use the banks of the river, or to divert the flow of its water, the charter is its security that the public will not prosecute it for maintaining its works. "The legislature could grant the franchise or license as against the public only; it could not license a trespass by its grantee upon land to which he had no title." *Stevens Point Boom Co. v. Reilly*, 44 Wis., 303; *Lee v. Pembroke Iron Co.*, 2 Am., 60; *Perry v. Wilson*, 7

Mass., 393; *Grand Rapids Booming Co. v. Jarvis*, 30 Mich., 323. 3. If the rights of the plaintiff have been violated, he is entitled to the relief sought, although the actual damage thus far suffered has been nominal. Wood on Nuis., §§ 774–6; *Rochdale Canal Co. v. King*, 21 Eng. Law & Eq., 177; *Clowes v. Waterworks Co.*, L. R., 8 Ch. App., 125; *Embrey v. Owen*, 6 Exch., 368; *Webber v. Gage*, 39 N. H., 182; *Bassett v. Manuf'g Company*, 47 id., 224; *Wright v. Moore*, 38 Ala., 593; *Phœnix Water Co. v. Fletcher*, 23 Cal., 483; *Holsman v. Boiling Spring Co.*, 1 McCart. (14 N. J. Eq.), 335; *Cotton v. Rum River Boom Co.*, 19 Minn., 497; *Webb v. Portland Co.*, *Corning v. Troy I. & N. Co.*, and *Middleton v. Booming Co.*, *supra*.

RYAN, C. J. It is settled in this state, that a riparian owner on navigable water may construct in front of his land, in shoal water, proper wharves, piers and booms, in aid of navigation, at his peril of obstructing it, far enough to reach actually navigable water. This is properly a riparian right, resting on title to the bank, and not upon title to the soil under water. It is a private right, however, resting, in the absence of prohibition, upon a passive or implied license by the public; is subordinate to the public use, and may be regulated or prohibited by law. *Diedrich v. Railway Co.*, 42 Wis., 248; *Stevens Point Boom Co. v. Reilly*, 44 Wis., 295; *S. C.*, 46 Wis., 237.

It is not questioned that the respondent had this right in front of his land on the Wisconsin river, before the passage of chapter 45, P. & L. Laws of 1871, amended by chapter 256 of 1873. Section 10, however, of the former chapter, grants to the appellant the exclusive right of constructing booms necessary for holding, storing and assorting logs, etc., for a certain distance up and down the bank of the river, including the respondent's land fronting upon it.

Nothing in the section or elsewhere in these statutes, taken together, will bear a construction authorizing the use by the

appellant of any part of the bank of the river owned by others, or the exercise of the riparian right of others, within the limit defined. Of course, that could not be done for a private use; or for a public use, without just compensation, by the exercise of the right of eminent domain. Such a power was given in the statute of 1871, but it is expressly taken away by the statute of 1873. Under the two statutes, so far as the use of the bank of the river is essential to the exercise of the franchises granted to the appellant, it is confined to its own riparian ownership; and the exclusive right of the appellant as against other riparian owners is prohibitory only of the exercise of the right by the latter. In this respect the construction of the statutes is sufficiently plain. The appellant's boom can rest on the bank of the river only in right of the appellant's riparian ownership; but its works in aid of the boom may extend in the water, up and down the river, excluding all other booms within the limits specified.

The prohibition of the section is not express. It is only an incident of the exclusive grant. The validity of the prohibition is therefore dependent on the validity of the grant. A statute may, indeed, in the exercise of legislative discretion, take away the exercise of the private right, which is a *quasi* intrusion upon the public right, is subservient to it, and exists only by public sufferance. But this can be properly done only in the enforcement of the paramount public right; and a statute granting an exclusive right to one riparian owner, for a private use, could not be supported as a valid prohibition of the right of adjacent riparian owners. Such a provision would not be an assertion of the paramount public right, but the subordination of one private right to another; would not be in aid of public use, but of a *quasi* monopoly of private use. As between several riparian owners such a provision would have effect to give one owner's land somewhat of the nature of a dominant estate, and the lands of the others somewhat of the nature of servient estates. This could not be up-

held as a valid exercise of legislative control over the private riparian right.

The controlling question in this case, therefore, is whether the franchises of the appellant are granted for a public or for a private use.

As they stood under chapter 45 of 1871, it would be difficult to consider the appellant other than a private corporation, for private use; for section 15 of that statute gives a preference to the members of the corporation over the general public, in the use of the works authorized. But the amendment of· 1873 takes away the preference, and gives an equal right in the use of the works to all the world; and the question here must be determined under the latter provision.

In this state, navigable water includes all water capable of actual navigation *(Diedrich v. Railway Co., supra)*, and the capacity of floating logs to market is sufficient to make water navigable within the rule. *Olson v. Merrill*, 42 Wis., 203. Whether and how far navigable for other purposes, the capacity of floating logs to market appears to be the chief navigable value of the Wisconsin river, as the legislation relating to it and numerous cases in this court abundantly show. Whatever equally aids this use of the river by all having occasion for it, is of public purpose *( Wisconsin R. I. Co. v. Manson*, 43 Wis., 255); and the utility, indeed the necessity, of booms at convenient points for receiving, assorting and distributing logs, such as the appellant is authorized to construct, is so universal on such rivers that it is judicially recognized as entering into the law governing their use. *Pound v. Turck*, 95 U. S., 459. See also *Delaplaine v. Railway Co.*, 42 Wis., 214; *S. P. Boom Co. v. Reilly, supra; G. R. Booming Co. v. Jarvis*, 30 Mich., 308; *Perry v. Wilson*, 7 Mass., 393; *Lawler v. Boom Co.*, 56 Maine, 443.

The appellant must therefore be held to be a *quasi* public corporation *(Att'y Gen. v. Railroad Cos.*, 35 Wis., 425), an agent of the state for the improvement of the river *( Wis. R.*

*I. Co. v. Manson, supra)*, and its franchises granted for a public use.

Of course, private property of others could not be in any way appropriated or used by the appellant in aid of the public purpose, without authority of law, upon just compensation. But the land of the respondent is neither taken nor used; the works of the appellant neither touch it nor overflow it. The statutes under which the appellant acts authorize no such interference with the property of others. They only aid the public use for which the appellant is chartered, by restraining the exercise of a private right, which the legislature appears to have considered inconsistent with it; a right which the respondent, as other riparian owners, held only by implied public license — as it were, as tenant by sufferance of the state; a right of which the exercise might always be prohibited by public law, in aid of public use. The private right is a *quasi* intrusion upon the public right, tolerated only in private aid of navigation, and gives way, *ex necessitate rei*, to public measures in aid of navigation.

"This private right of the riparian owner is subordinate to the public use of a navigable river, and is always exercised at peril of obstructing navigation. This subjection of the private right to the public use may sometimes impair the private right or defeat it altogether. But the public right must always prevail over the private exercise of the private right." *S. P. Boom Co. v. Reilly*, 46 Wis., 237. As against the riparian owners, within the limits specified in the statute, the state has only resumed its own. Otherwise, the title, possession and use of the respondent's land remain intact. If the public action lessen its value, it is literally *damnum absque injuria. Alexander v. Milwaukee*, 16 Wis., 247.[1]

---

[1] The authority of *Alexander v. Milwaukee* is not considered shaken by *Arimond v. G. B. & M. Canal Co.*, 31 Wis., 316. The cases are both well decided, on essentially different grounds, and, properly understood, quite consistent with each other.

And this proceeding, to restrain the agent of the state in the exercise of franchises granted in public right for public use, is equivalent in principle to a private action against the state itself to subordinate the paramount public right to the subservient private right.

So far the appellant's works have been considered as complying with its franchises. It may be that they are so constructed as to impede the general navigation of the river. If so, the remedy is surely not by a proceeding in equity at the suit of a private person. It may be that the appellant has so used its works, in the handling of rafts or logs, as to give some right of action to the respondent. If so, the action is surely at law, sounding in damages. *Remington v. Foster*, 42 Wis., 608.

*By the Court.*—The judgment is reversed, and the cause remanded to the court below with directions to dismiss the complaint.